**Arthur WERNER, Esquire, Appellant,**

v.

**J. PLATER–ZYBERK, Jr., Ph.D, Stephen A. Winston, Esquire, Berger & Montague, P.C., Joseph Posillicio, Esquire, and Synnestvedt & Lechner, L.L.P. Appellees.**

Superior Court of Pennsylvania.

Argued June 26, 2001.

Filed Feb. 21, 2002.

Alan Zibelman, Philadelphia, for appellant.

Jeffrey B. Albert, Philadelphia, for appellee.

Richard A. Sprague, Philadelphia, for Senate of the Com., amicus curiae.

Before HUDOCK, STEVENS and POPOVICH *, JJ.

HUDOCK, J.

¶ 1 This is an appeal from an order granting the preliminary objections in the nature of a demurrer filed by Appellees (J. Plater–Zyberk, Jr., Ph.D., Stephen A. Winston, Esquire, Berger & Montague, P.C., Joseph Posillicio, Esquire, and Synnestvedt & Lechner, L.L.P.) and dismissing the complaint filed by Appellant (Arthur Werner, Esquire). For the reasons set forth below, we reverse, reinstate the complaint, and remand for further proceedings consistent with this opinion.

¶ 2 The Pennsylvania state court civil action underlying this appeal arose from a prior action filed in federal district court by Appellees. Appellees in the present action alleged in federal court, *inter alia*, that Appellant and several of his business associates were guilty of violating the federal Racketeering Influence and Corrupt Organization Act (RICO), 18 U.S.C. section 1962(c) & (d). Appellees also asserted several pendent state claims in their federal case. The federal district court dismissed the RICO complaint on February 17, 1998, pursuant to federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action. All of the parties to the federal action were either natural persons residing in Pennsylvania or Pennsylvania corporations. Thus, once the district court dismissed the RICO count, it lacked any independent federal jurisdiction over the pendent state causes of action. The federal district court, therefore, invoked 28 U.S.C. section 1376(c)(3) and dismissed the entire complaint.[1] The Court of Appeals for the Third Circuit affirmed the district court's ruling on November 10, 1999. *Plater–Zyberk v. Abraham*, 203 F.3d 817 (3d Cir.1999) (disposition without opinion).

¶ 3 On August 11, 2000, Appellant filed a complaint with the Court of Common Pleas of Philadelphia County naming Appellees, the plaintiffs in the predecessor federal action (the *Plater–Zyberk* action), as the defendants. Appellant asserted that, in their pursuit of the *Plater–Zyberk* action, Appellees violated his rights under Pennsylvania law and were liable for, among other things, committing the torts of malicious prosecution and/or abuse of legal process pursuant to the substantive laws of this Commonwealth. Appellees jointly filed preliminary objections in the nature of a demurrer on September 11, 2000. The trial court heard argument on the matter in November of 2000. On December 1, 2000, the trial court entered an order granting Appellees' preliminary objections and dismissing the complaint for "legal insufficiency." *See* Trial Court Order, 12/1/00. The trial court's order was not docketed until December 7, 2000.

¶ 4 Appellant filed a timely notice of appeal on December 28, 2000. The trial court ordered Appellant to file a concise statement of matters raised on appeal pursuant to Rule of Appellate Procedure 1925(b), and Appellant complied. The present appeal raises a single issue for our consideration:

WHETHER THE TRIAL COURT COMMITTED ERROR OF LAW IN GRANTING PRELIMINARY OBJEC-

---

* Judge Popovich did not participate in the consideration or determination of this case.

1. Although the United States District Court for the Eastern District of Pennsylvania reached its determination on February 17, 1998, the case was not filed until the following day. The federal court's memorandum decision is available at *Plater–Zyberk v. Abraham*, 1998 U.S. Dist. Lexis 1736 (E.D.Pa. February 18, 1998), and at *Plater–Zyberk v. Abraham*, 1998 WL 67545 (E.D.Pa. February 17, 1998).

TIONS IN THE NATURE OF A DEMURRER FOR LEGAL INSUFFICIENCY UNDER THE PENNSYLVANIA WRONGFUL USE OF CIVIL PROCEEDING STATUTE ("THE DRAGONETTI ACT") THEREIN RAISING A NEW LEGAL STANDARD THAT "FEDERAL LITIGANTS ARE PRECLUDED FROM AVAILING THEMSELVES OF STATE REMEDIES IN STATE COURT FOR LITIGATION MISCONDUCT WHICH OCCURRED IN FEDERAL COURT WHERE JURISDICTION WAS BASED ON [A] FEDERAL QUESTION."

Appellant's Brief at 2.

¶ 5 Before proceeding to the merits of Appellant's claim, we initially note that federal court decisions do not control the determinations of the Superior Court. *Kleban v. National Union Fire Insurance Co.*, 771 A.2d 39, 43 (Pa.Super.2001). Our law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved. *Commonwealth v. Lambert*, 765 A.2d 306, 315 n. 4 (Pa.Super.2000), *cert. denied*, 532 U.S. 919, 121 S.Ct. 1353, 149 L.Ed.2d 284 (2001). *Accord Cambria–Stoltz Enterprises v. TNT Investments*, 747 A.2d 947, 952 (Pa.Super.2000). When the Third Circuit has spoken on a federal issue, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate for this Court to follow Third Circuit precedent in preference to that of other jurisdictions. *Cellucci v. General Motors Corp.*, 450 Pa.Super. 438, 676 A.2d 253, 255 n. 1 (1996), *aff'd*, 550 Pa. 407, 706 A.2d 806 (1998). Whenever possible, Pennsylvania state courts follow the Third Circuit so that litigants do not improperly "walk

across the street" to achieve a different result in federal court than would be obtained in state court. *Id.* (citing *Commonwealth v. Negri*, 419 Pa. 117, 213 A.2d 670 (1965), and *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993)). Thus, if the Third Circuit has not ruled on a specific question, this Court may seek guidance from the pronouncements of the other federal circuits, as well as the district courts, in the same spirit in which the Third Circuit itself considers such decisions. Furthermore, if there is a circuit split and the pronouncements of the Third Circuit are "clearly wrong" in light of the decisions of other circuits, Pennsylvania appellate courts need not follow the Third Circuit's decisions. *City of Philadelphia v. Public Utility Commission*, 676 A.2d 1298, 1305 n. 10 (Pa.Cmwlth.1996), *appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996), *cert. denied*, 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997).

¶ 6 Procedurally, the present appeal stems from the grant of preliminary objections in the nature of a demurrer. When an appeal arises from an order sustaining preliminary objections in the nature of a demurrer, which results in the dismissal of a complaint, the Superior Court's scope of review is plenary. *DeMary v. Latrobe Printing and Publishing Co.*, 762 A.2d 758, 761 (Pa.Super.2000) (*en banc*).

> When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review.

*Id.* (emphasis removed). We need not consider the pleader's legal conclusions, unwarranted inferences from facts, opinions, or argumentative allegations. *Wier-*

*nik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 619 (Pa.Super.1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000).

¶ 7 The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *DeMary*, 762 A.2d at 761. Where affirmance of the trial court's order sustaining preliminary objections would result in the dismissal of an action, we may do so only when the case is clear and free from doubt. *Id.*

> To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review the trial court's decision for an abuse of discretion or an error of law.

*Id.* (citations and quotations omitted). A demurrer tests the sufficiency of challenged pleadings. *Composition Roofers Local 30/30B v. Katz*, 398 Pa.Super. 564, 581 A.2d 607, 609 (1990). Fact-based defenses, even those which might ultimately inure to the defendant's benefit, are thus irrelevant on demurrer. *Orner v. Mallick*, 515 Pa. 132, 135, 527 A.2d 521, 523 (1987).

¶ 8 In the context of reviewing preliminary objections in the nature of a demurrer, an abuse of discretion is not merely an error of judgment. *Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 181 n. 11 (Pa.Super.1999). Rather, the trial court commits an "abuse of discretion" when its judgment is manifestly unreasonable, or when the law is not applied, or if the record shows that the decision resulted from partiality, prejudice, bias or ill will. *Id.* One way of summing up all the qualities commonly attributed to a valid exercise of judicial discretion is to say that "the decision had merit." *Id.* Conversely, if the reason for performing the discretionary act had no merit, then the trial court will be deemed to have abused its discretion. *Id.* Thus, when viewed in terms of the degree of scrutiny that should be applied, an inquiry into an abuse of discretion is operationally equivalent to an inquiry into the merit of the trial court's decision. *Id.* (citing *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 447–48, 625 A.2d 1181, 1185 (1993)).

¶ 9 Appellant's complaint alleges that Appellees engaged in a course of conduct toward him that constituted both abuse of legal process and wrongful use of civil proceedings as these torts are framed by Pennsylvania state law. *See Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa.Super.1998) (defining abuse of process), and 42 Pa.C.S.A. § 8351–8355 (wrongful use of civil proceedings). Appellant claims that he is entitled to relief in state court, under color of Pennsylvania law, independently of any federal cause of action that might accrue to him, or of any sanctions that might be imposed against Appellees by the federal district court in which the underlying action was conducted. Appellees respond that the peculiar federal interests raised by Appellant's claims mandate the use of the federal district court and preclude relief in state court. Before addressing the specific contentions of the parties, we must resolve a more fundamental question concerning the nature and purpose of the law of torts in comparison to the nature and purpose of court imposed sanctions.

¶ 10 At least one scholar has defined a tort as "an act or omission which unlawfully violates a person's right created by the law, and for which the appropriate remedy is a common law action for damages by the injured person." Prosser and Keeton on The Law of Torts 2 n. 3 (W. Page Keeton ed., 5th ed.1984) (quoting Burdick, Torts, 3d Ed.1913, 12). The law

of torts "is directed toward the compensation of individuals, rather than the public, for losses which they have suffered within the scope of their legally recognized interests generally, rather than .one interest only, where the law considers that compensation is required." *Id.* at 5–6. The common thread woven into all torts is the idea of unreasonable interference with the interests of others. *Id.* at 6. A civil action sounding in tort is commenced and maintained by the injured person. *Id.* at 7. The policy behind the law of torts is to put an injured person in a position as near as possible to his position prior to the acts that comprise the tort. *Reformed Church v. Theodore Hooven & Sons, Inc.,* 764 A.2d 1106, 1109 (Pa.Super.2000). Thus, its primary purpose is to compensate an individual, at the expense of the wrongdoer, for the damage incurred. Prosser and Keeton at 7. *Compare Hazleton Area School District v. Bosak,* 671 A.2d 277, 283 (Pa. Cmwlth.1996) (citing Restatement (Second) of Torts § 901 (1977)) (the policy consideration underlying tort law is the protection of persons and property from losses resulting from injury to that person or property).

¶ 11 Appellees argue that Appellant's interests would be vindicated adequately via sanctions imposed by the federal district court. However, the damages Appellant seeks are distinct from the various types of penalties that may be imposed by a court as sanctions against a tortfeasor. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 553–54, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). Sanctions, including monetary sanctions paid to an adversary in the form of fees or costs, address the interests of the court and not those of the individual. *Id.* A litigant cannot rely on a sanction motion to seek compensation for every injury that the sanctionable conduct produces. *In re Spectee Group, Inc.,* 185 B.R. 146, 162–63 (Bkrtcy.S.D.N.Y.1995). Rather, an injured party must request tort damages to protect his personal interest in being free from unreasonable interference with his person and property. *Business Guides, Inc.,* 498 U.S. at 553–54, 111 S.Ct. 922, 112 L.Ed.2d 1140.

¶ 12 Appellees argue that Appellant must seek sanctions under the federal procedural rules, specifically under Rule 11. Several of the federal rules provide for the imposition of sanctions, not merely Rule 11. *See, e.g.,* Rules 16, 26, 30, 37, 56. *See generally Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 n. 8, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (discussing possible sanctions under the federal rules). It is correct to say that all federal courts have the inherent power to vindicate their judicial authority by sanctioning any conduct which abuses the judicial process. *Id.* at 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27. Nevertheless, the United States Supreme Court explicitly held that Rule 11 does not create a federal common law of malicious prosecution. *Business Guides, Inc.,* 498 U.S. at 553, 111 S.Ct. 922, 112 L.Ed.2d 1140.

¶ 13 "The main objective of [Rule 11] is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." *Id.* While imposing monetary sanctions under Rule 11 may confer a financial benefit on a victimized litigant, this is merely an incidental effect on the substantive rights thereby implicated. *Id.* Simply put, Rule 11 sanctions cannot include consequential damages and thus are not a substitute for tort damages. *Id. See also* Fed.R.Civ.P. 11, Advisory Committed Notes (1993) ("[I]t should be noted that Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process."). In light of the foregoing, we con-

clude that Appellant's right to seek tort damages for his alleged injuries exists independently of, and in addition to, any rights he might possess to petition for sanctions from the federal district court predicated on the manner in which the *Plater–Zyberk* action was pursued in that court.

¶ 14 Although we have concluded that Rule 11 sanctions are no substitute for tort damages, nothing in this determination precludes Appellant from requesting the federal district court to impose sanctions. As explained above, Appellant's interests in seeking damages in tort from the Pennsylvania state court comprise a separate consideration from the federal district court's interest in maintaining the integrity of the court and preventing abuse of the judicial process. *See Chambers*, 501 U.S. at 56, 111 S.Ct. 2123, 115 L.Ed.2d 27 ("under Rule 11, sanctions may be imposed years after a judgment on the merits"). Federal sanctions are not in derogation of state common law remedies, and both may be sought predicated on the same underlying factual and procedural events. *See, e.g., Heffernan v. Hunter*, 189 F.3d 405, 413 n. 7 (3d Cir.1999) (explaining that the inherent power of the federal courts to sanction improper conduct does not preclude a claim for wrongful use of civil proceedings under the provisions of Pennsylvania law). Furthermore, the denial of sanctions under federal Rule 11 does not foreclose the assertion of a subsequent suit for malicious prosecution. *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1196 (3d Cir.1993) (citing *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir.1991), *cert. denied*, 502 U.S. 861, 112 S.Ct. 180, 116 L.Ed.2d 142 (1991) for the proposition that a grant of Rule 11 sanctions is not *res judicata* with respect to a state law claim of malicious prosecution, and *Amwest Mortgage Corp. v. Gra-*

*dy*, 925 F.2d 1162, 1165 (9th Cir.1991) as authority that the denial of Rule 11 sanctions will not support a federal court's enjoining a state malicious prosecution proceeding).

¶ 15 The torts of malicious prosecution and abuse of process are separate and distinct but often confused. *Al Hamilton Contracting Co. v. Cowder*, 434 Pa.Super. 491, 644 A.2d 188, 191 (1994). "Abuse of process" is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Shiner*, 706 A.2d at 1236 (quoting *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993)).

> To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.

*Id.* Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. *McGee v. Feege*, 517 Pa. 247, 259, 535 A.2d 1020, 1026 (1987). Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question. *Rosen*, 627 A.2d at 192.

¶ 16 Abuse of process is a state common law claim. However, allegations of malicious prosecution invoke Pennsylvania's statutory law in the form of the wrongful use of civil proceedings statute or "Dragonetti Act." 42 Pa.C.S.A. §§ 8351–8355. Wrongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause. *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa.Super.2001). Our

statutory law sets forth the elements that must be established for a viable cause of action pursuant to the Dragonetti Act as follows:

## Wrongful use of civil proceedings

(a) **Elements of action.**—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) **Arrest or seizure of person or property not required.**—The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

42 Pa.C.S.A. § 8351. Thus, in an action for wrongful use of civil proceedings, the plaintiff first must demonstrate that the person taking part in the initiation, procurement or continuation of civil proceedings either acted in a grossly negligent manner, or that he lacked probable cause. *Broadwater v. Sentner*, 725 A.2d 779, 782 (Pa.Super.1999), *appeal denied*, 562 Pa. 664, 753 A.2d 814 (2000). The plaintiff must also prove that the prior proceedings terminated in his favor and against the person against whom the Dragonetti Act charge has been filed. *Id.*

¶ 17 The trial court did not address the sufficiency of Appellant's averments in light of the above legal standards. Rath-er, the trial court dismissed Appellant's complaint on the following grounds:

[F]ederal litigants are precluded from availing themselves of state remedies in state court for litigation misconduct where the subject litigation abuse occurred in Federal Court and the Federal Court's jurisdiction was based on [a] federal question.

Trial Court Opinion, 2/22/01, at 3. We disagree.

¶ 18 Neither the Dragonetti Act itself, nor subsequently decided case law concerning malicious prosecution or abuse of process, impose any restriction prohibiting an aggrieved party from seeking redress in Pennsylvania state court predicated on process served in, or "civil proceedings" conducted in, a jurisdiction other than this Commonwealth. Indeed, Pennsylvania case law demonstrates the exact opposite in that our state courts previously have elected to address the merits of tort claims stemming from actions conducted in federal court. *See, e.g., Kelly–Springfield Tire Co. v. D'Ambro*, 408 Pa.Super. 301, 596 A.2d 867 (1991) (reinstating complaint asserting torts claims, including a Dragonetti claim, predicated on acts that occurred during federal litigation in the United States District Court for the Eastern District of Pennsylvania); *Rosen v. Tesoro Petroleum Corporation*, 399 Pa.Super. 226, 582 A.2d 27 (1990) (wherein the Court of Common Pleas of Philadelphia County exercised jurisdiction over tort claims for abuse of process, malicious prosecution, malicious misuse of criminal proceedings and civil conspiracy predicated on a class action filed in Texas federal district court). The converse is also true. Federal courts have exercised jurisdiction over tort claims for malicious prosecution predicated on litigation conducted in Pennsylvania state court. *See, e.g., Baird v. Aluminum Seal*

*Co., Inc.,* 149 F.Supp. 874 (W.D.Pa.1956), *aff'd,* 250 F.2d 595 (3d Cir.1957).

¶ 19 Our diligent search has uncovered no Pennsylvania case, Third Circuit decision, or United States Supreme Court ruling, that explicitly bars a litigant from seeking application of the Dragonetti Act when the predicate proceedings occurred in federal district court. Furthermore, we have found no ruling that would preclude a suit based on the Pennsylvania common law torts of abuse of process or malicious prosecution in such a situation. Whether such tort claims are advanced in Pennsylvania state court or in a federal district court in Pennsylvania makes no difference: the decisional law of the Third Circuit requires Pennsylvania district courts to adjudicate the matter under Pennsylvania law. *See, e.g., Lippay v. Christos,* 996 F.2d 1490, 1502 (1993) (when federal court has jurisdiction to consider a tort claim, it applies the common law of the forum state).

¶ 20 In the present case, the trial court's ruling may be understood as a decision that federal law is pre-emptive when tort claims are predicated on the filing of an action in federal district court. Federal preemption is a jurisdictional matter for a state court because it challenges subject matter jurisdiction and the competence of the court to reach the merits of the claims raised. *Fetterman v. Green,* 455 Pa.Super. 639, 689 A.2d 289, 291–92 (1997). Thus, whether the question of federal preemption is raised by the parties or by the court *sua sponte,* the matter must be sifted to ascertain whether the trial court has the authority to entertain the cause of action.

¶ 21 The principle of federal preemption of state law derives from the second clause of Article VI of the Constitution, the Supremacy Clause. *Shiner,* 706 A.2d at 1237(citing U.S. Const. Art. VI, cl.

2). Under the Supremacy Clause, federal law is "the supreme Law of the land" and any conflicts between federal and state laws must be resolved in favor of federal law. *Burgstahler v. AcroMed Corp.,* 448 Pa.Super. 26, 670 A.2d 658, 663–64 (1995). The United States Supreme Court has recognized three ways in which federal law may preempt, and thereby displace, state law: (1) "express preemption," (2) "field preemption" (also termed "implied preemption"), and (3) "conflict preemption." *Orson, Inc. v. Miramax Film Corp.,* 189 F.3d 377, 381 (3d Cir.1999), *cert. denied,* 529 U.S. 1012, 120 S.Ct. 1286, 146 L.Ed.2d 232 (2000). Express preemption arises when there is an explicit statutory command that state law be displaced. *Id.* Under the principles of field (or implied) preemption, state law may be displaced "if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (quoting *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). Finally, state law may be displaced under conflict preemption principles if the state law in question presents a conflict with federal law in one of two situations: (a) when it is physically impossible to comply with both the state and the federal law, or (b) when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* at 381–82.

¶ 22 State law and federal regulations on the same subject both may apply when state law is not in conflict with, and may be construed consistently with, federal law and regulations. *See generally Geier v. American Honda Motor Co.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). Preemption is primarily a matter of congressional intent. *Id.* at 884, 120 S.Ct. 1913, 146 L.Ed.2d 914. State law is

impliedly preempted only when it directly conflicts with federal law by constituting an obstacle to accomplishing and executing Congress' full purposes and objectives. *Id.*

¶ 23 It is also well established that federal law may impliedly preempt state law to the extent that the state law conflicts with a federal regulatory scheme. *Pokorny v. Ford Motor Company,* 902 F.2d 1116, 1122 (3d Cir.1990). A federal regulation may have just as much preemptive effect as a federal statute. *Id.* Moreover, common law liability also may create a conflict with federal law. *Id.* "Enforcement of common law duties can have the same regulatory effect as an affirmative legislative enactment." *Shulick v. Paine-Webber, Inc.,* 554 Pa. 524, 528, 722 A.2d 148, 150 (1998). Preemption is thus no less of an issue when common law requirements, rather than statutory mandates, are concerned. *Id.* Nevertheless, both federal law and Pennsylvania law clearly hold that there is a presumption against preemption. *Pokorny,* 902 F.2d at 1122 (citing *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)); *Fetterman,* 689 A.2d at 292. The historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress. *Burgstahler,* 670 A.2d at 665 (quoting *Cipollone,* 505 U.S. at 514, 112 S.Ct. 2608, 120 L.Ed.2d 407). The presumption against preemption under the Supremacy Clause strongly applies whenever preemption would deny a party access to all judicial remedies. *Burgstahler,* 670 A.2d at 665–66 (citing *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251–52, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984)).

¶ 24 The presumption against federal preemption of state law is one of "dual jurisdiction" which "results from reasons of comity and mutual respect between the two judicial systems that form the framework of our democracy." *Fetterman,* 689 A.2d at 292 (citing *Cipollone, supra* and *Michael v. Shiley, Inc.,* 46 F.3d 1316 (3d Cir.1995)). As our sister court, the Commonwealth Court of Pennsylvania, succinctly explained: "There is no hierarchical arrangement between state courts and federal courts that exercise jurisdiction within that state. Under the federal system, the states possess sovereignty concurrent with that of the federal government." *City of Philadelphia,* 676 A.2d at 1309 n. 10. For these reasons, in the absence of explicit preemption, state law must create an actual conflict with a federal law or regulatory scheme before it is impliedly preempted. *Pokorny,* 902 F.2d at 1122. *See Geier,* 529 U.S. at 884, 120 S.Ct. 1913, 146 L.Ed.2d 914 (state law is impliedly preempted only when it directly conflicts with federal law). *See also Hunsaker v. Surgidev Corp.,* 818 F.Supp. 744, 751 (M.D.Pa.1992) (holding that state causes of action sounding in tort survive federal preemption if there is no specific federal counterpart).

¶ 25 In support of their position, Appellees have cited several authorities for the proposition that only a federal court has jurisdiction to vindicate the rights of a victim of tortious acts committed in federal court. First, Appellees discuss the views of Alexander Hamilton concerning the power of the federal judiciary as set forth in the Federalist Papers. We do not find this argument at all pertinent to the present case. Appellees also point to several early federal decisions, such as *Harrison v. St. Louis & San Francisco Railroad Co.,* 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621 (1914), as requiring state courts to refrain from any action that would impede access to the federal courts or that would divest them of their authority. While we agree with this assertion, we cannot find

that it applies in any way to the present case. Appellant is not seeking to preclude Appellees from accessing the federal courts; rather, Appellees wish to prevent Appellant obtaining redress in state court.

¶ 26 Neither the trial court nor Appellees have pointed to any statute, regulation, or federal decision explicitly indicating that federal law preempts state tort claims of abuse of process or wrongful use of civil proceedings when the underlying proceedings occurred in federal district court. Nor has our research uncovered any such statute, regulation, or federal decision. We conclude that direct preemption does not apply in this case. The question remains, however, whether "field preemption" (implied preemption) or conflict preemption preclude the trial court from hearing Appellant's case.

¶ 27 Appellees have failed to explain specifically, in a manner congruent with the above standards, why Appellant's cause of action should be deemed impliedly preempted. They simply have cited to no decision or statute that indicates Congress intends to occupy the field of tort claims for malicious prosecution or abuse of process. Furthermore, they have not explained why Appellant's causes of action must be seen to be in conflict with any federal statute, regulation or case law. The United States Supreme Court has proscribed creating a conflict between state and federal law where none exists. *See Huron Portland Cement Co. v. City of Detroit, Mich.*, 362 U.S. 440, 446, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960) (wherein the Supreme Court enjoined seeking out non-existent conflicts between state and federal regulation).

¶ 28 We are cognizant of Appellees' contentions that the present appeal does not raise the issue of whether a federal question exists and that the preemption doctrine has "no bearing" on the instant matter. Appellees' Brief at 26–27. We cannot agree. Both considerations are significant because of the nature of federal jurisdiction and the manner in which federal law assigns the burden of establishing jurisdiction. As already discussed, the question of preemption challenges subject matter jurisdiction and the competence of the court to reach the merits of the claim raised. *Fetterman*, 689 A.2d at 291–92. "Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law." *Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564, 568 (Pa.Super.2001). The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved. *Id.* Jurisdiction lies if the court has the power to enter into the inquiry, not whether it might ultimately decide that it could not grant relief in a particular case. *Id.* When determining whether a trial court correctly decided the issue of subject matter jurisdiction, Superior Court will accept as true all facts averred in the plaintiff's complaint. *Id.*

¶ 29 Federal courts created by statute are courts of limited jurisdiction. *Kokkonen v. Guardian Life Insurance Company*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Federal district courts possess only that power authorized by the Constitution and by Congressional statute. *Erienet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir. 1998). State courts, however, are courts of general jurisdiction. *Id.*, 156 F.3d at 516. The rule is of longstanding duration that at all stages of any proceedings, federal jurisdiction is never presumed but always must appear affirmatively on the record. *Lehigh Mining & Manufacturing Co. v. Kelly*, 160 U.S. 327, 337, 16 S.Ct. 307, 40 L.Ed. 444 (1895). The presumption is that a cause of action lies outside this limited

federal jurisdiction. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673, 128 L.Ed.2d 391. The burden of establishing the contrary rests squarely upon the party asserting jurisdiction. *Id.*

¶ 30 The United States Supreme Court has indicated clearly that for a federal court to have jurisdiction over any controversy, "the Constitution must have given the court the capacity to take it, and an act of Congress must have supplied it." *Grays Ferry Cogeneration Partnership v. PECO Energy Company,* 998 F.Supp. 542, 549 (E.D.Pa.1998) (quoting *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)). The essence of Appellees' argument is that Appellant's complaint "arises under" federal law thereby raising a federal question. The *Plater-Zyberk* action underlying the present appeal was filed in the Federal District Court for the Eastern District of Pennsylvania. Thus, we shall apply that court's standard for determining whether a question "arises under" federal law.

 ¶ 31 Federal courts are governed by the "well-pleaded complaint rule," which requires that a federal question be presented on the face of the complaint. *Grays Ferry Cogeneration Partnership,* 998 F.Supp. at 549 (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).

> When reviewing the face of a complaint for federal question jurisdiction, there are two categories of cases through which a suit may "arise under" federal law. Justice Holmes phrased the first category: "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). The second [category occurs] when the plaintiff's cause of action is based on state law, but a federal law that creates a cause of action is an essential component of the plaintiff's complaint. *See, e.g., Hopkins v. Walker,* 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917).

*Id.*

¶ 32 Clearly, Appellant's torts claims do not fall within the second category because they do not in any way include a federal law, statute or regulation as an essential component of the complaint. (We have already explained why federal procedural Rule 11 does not set forth an essential element of Appellant's torts claims.) Appellees have not advanced any specific federal statute as a component of Appellant's torts claims, and our research has not uncovered any such statute. Rather, when federal courts within the Third Circuit have occasion to consider allegations of malicious prosecution or abuse of process, they rely entirely upon Pennsylvania's substantive law when Pennsylvania is the forum state. *See, e.g., Burgh v. Borough Council of Borough of Montrose,* 251 F.3d 465, 474 (3d Cir.2001) (when subject matter is based on diversity of citizenship, federal court must apply state substantive law to the underlying torts claim); *Kane v. BOC Group, Inc.,* 234 F.3d 160, 162 (3d Cir.2000) (federal courts sitting in diversity must apply substantive law of the pertinent state court); *Lippay, supra* (in action brought under 42 U.S.C. § 1983, Third Circuit will apply Pennsylvania substantive law to the underlying malicious prosecution claim when Pennsylvania is the forum state).

 ¶ 33 The federal District Court for the Eastern District of Pennsylvania explained the manner in which a case can be said to fall within Justice Holmes's first category as follows:

> Turning to the first category of cases, there are in essence three ways in which federal law "creates" a cause of action:

first, when a federal law provides both a substantive right and a remedy for vindicating that right, second, when a federal law grants a substantive right and a federal remedy fairly may be implied from that right, and, third, when federal law so thoroughly preempts state law that it converts an ordinary state common-law claim into one stating a federal claim for purposes of the well-pleaded complaint rule.

*Grays Ferry Cogeneration Partnership,* 998 F.Supp. at 549 (citations and quotations omitted). As already noted, Appellees have cited to no specific federal statute or regulation that can be said to "create" Appellant's cause of action against Appellees as alleged tortfeasors. Indeed, as discussed above, federal courts apply the law of the forum state when adjudicating torts claims which are properly before them on diversity grounds, or on some other basis such as a civil rights action filed pursuant to 42 U.S.C. section 1983. Nor have we found any indication that Congress or the federal constitution have evinced any intention to occupy the field of torts claims as it has, for example, with bankruptcy law or copyright law. *See Shiner,* 706 A.2d at 1238 (Bankruptcy Code demonstrates Congress's intent to create a whole system under federal control therefore mandating that the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal, thereby precluding state law remedies for abuse of its proceedings); *Orson, Inc., supra* (holding that the Copyright Act manifests congressional intent to implement a nationally uniform system for creating and protecting rights in a copyrighted work and thus preempts Pennsylvania law concerning distribution and licensing of motion picture films). *Compare Mitnik v. Cannon,* 784 F.Supp. 1190 (E.D.Pa.1992), *aff'd,* 989 F.2d 488 (3d Cir.1993) (disposi-

tion without opinion), with the related and subsequent case of *Cannon v. Sheller,* 825 F.Supp. 722 (E.D.Pa.1993). In *Mitnik,* the federal district court held that Pennsylvania state law claims of fraudulent misrepresentation, breach of contract and breach of fiduciary duty were preempted by ERISA, Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. section 1001 *et seq.,* because they related to the role of the defendant in providing administrative services to pension funds and arose out of an alleged fiduciary relationship between pension funds and a consulting firm. In *Cannon v. Sheller,* 825 F.Supp. 722 (E.D.Pa.1993), the same court held that federal preemption did not apply to an abuse of civil proceedings claim predicated on the conduct of an earlier ERISA proceeding, because the state tort claims did not relate either directly or indirectly to ERISA itself.

¶ 34 We see no indication that a torts claim for abuse of process or for malicious prosecution can be said to create a federal question that would vest original subject matter jurisdiction in a federal district court. Certainly, the federal district courts have exercised pendent jurisdiction over such claims. However, the parties must first be in the federal district court on some basis other than the asserted state law claims. Our conclusions in this regard are bolstered by a recent decision of the very court in which Appellees argue that Appellant's claims should have been filed.

¶ 35 The District Court for the Eastern District of Pennsylvania determined that it lacked subject matter jurisdiction over Pennsylvania tort law claims for malicious prosecution and abuse of process predicated on the filing and conduct of an action in federal district court. *Fumo v. Gallas,* 2001 WL 115460 (E.D.Pa.2001). (A copy

of this decision is also available at 2001 U.S. Dist. Lexis 1140 (E.D.Pa.2001).) All the parties to the present action are Pennsylvania citizens and no party contends otherwise. Thus, diversity of citizenship provides no basis for establishing federal jurisdiction. *See Mennen Company v. Atlantic Mutual Insurance Company*, 147 F.3d 287, 290 (3d Cir.1998) (explaining diversity jurisdiction including the requirement of "complete diversity"). As in the present case, federal jurisdiction in *Fumo* could not be based on diversity of citizenship. The court, therefore, proceeded to ascertain whether the plaintiff's tort claims raised a federal question because, as in this case, they were predicated on events that occurred in the federal District Court for Eastern Pennsylvania.

¶ 36 The *Fumo* court concluded that a previously dismissed federal action does not cause a subsequently filed state court action for a malicious prosecution to "arise under" federal law. Furthermore, the court held that there is nothing in federal law, including Rule 11, that creates a federal common law tort of wrongful use of civil process that could be said to preempt state law claims for wrongful use of civil proceedings or abuse of process. *Id.* at *3. In the absence of a clear indication of congressional intent to preempt the field, the *Fumo* court declined to find federal subject matter jurisdiction. This decision is consistent with the earlier decision by the same federal district court in *Cannon v. Sheller* (discussed above).

¶ 37 We are not bound by the federal district court's rulings in either the *Fumo* case or in *Cannon*. *Lambert*, 765 A.2d at 315 n. 4 (Superior Court is not bound by the decisions of federal courts in the absence of a United States Supreme Court pronouncement). However, it would be foolish to ignore the fact that *Fumo* and *Cannon* were decided by the same court

that would sit on Appellant's claims, were he to file them in federal district court. Furthermore, in consideration of our own analysis, *supra*, we see no basis on which we could disagree with the result reached in *Fumo*. We therefore conclude that the issues presented in Appellant's complaint do not "arise under" federal law, do not implicate a federal question, and do not support the assertion of federal subject matter jurisdiction.

¶ 38 Appellees also contend that the phrase "civil proceedings," which appears in the Dragonetti Act, is limited under 42 Pa.C.S.A. section 102 to proceedings occurring in the Pennsylvania unified judicial system and state agencies. We find no basis for this claim in the Judicial Code or in our case law. Section 102 defines "proceeding" as including "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term does not include an action or an appeal." Section 102 itself does not preclude the possibility that the "proceeding" in question might have occurred in federal district court.

¶ 39 The Dragonetti Act imposes liability, under certain conditions, for "the procurement, initiation, or continuation of civil proceedings against another. . . ." 42 Pa. C.S.A. § 8351(a). The statute does not, on its face, limit the "civil proceedings" to those that occur in tribunals that fall under the aegis of the uniform judicial system of this Commonwealth. This Court has explained that the correct definition of "wrongful use of civil proceedings" pursuant to the Dragonetti Act is "a tort which arises when a party institutes a lawsuit with malicious motive and lacking probable cause." *Mi–Lor, Inc. v. DiPentino*, 439 Pa.Super. 636, 654 A.2d 1156, 1157 (1995). The definition does not include the requirement that the lawsuit in question

must have been initiated in Pennsylvania state court. Indeed, the phrase "civil proceedings," as explicated by our case law, plainly contrasts with "criminal proceedings" not with "federal proceedings." A criminal proceeding is "[o]ne instituted and conducted for the purpose either of preventing the commission of a crime, or for fixing the guilt of a crime already committed and punishing the offender; as distinguished from a 'civil' proceeding, which is for the redress of a private party." *Commonwealth v. Mordan*, 419 Pa.Super. 214, 615 A.2d 102, 106 n. 5 (1992), *aff'd without opinion*, 534 Pa. 390, 633 A.2d 588 (1993). In consideration of the above, we can see no grounds that would justify limiting the term "civil proceedings" in the Dragonetti Act to "proceedings" which have occurred in a Pennsylvania court of common pleas as opposed to "proceedings" that took place in federal district court.

¶ 40 For the above reasons, we find that the trial court erred in dismissing Appellant's complaint on the grounds that litigants cannot seek state torts remedies for litigation abuse that occurred in federal court. Because the trial court did not address the legal sufficiency of Appellant's complaint in light of the appropriate state torts law, we decline to do so in the first instance. We reverse the order of the trial court and reinstate Appellant's complaint. We remand for further proceedings consistent with this opinion.

¶ 41 Order reversed. The complaint is reinstated and the case is remanded for further proceedings. Jurisdiction relinquished.