J-S59031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE S. GARGES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GENISYS CREDIT UNION, CUMIS | : | No. 1196 EDA 2019 |
| INSURANCE SOCIETY, INC., LARRY | : | |
| S. EISMAN, KANTROWITZ & | : | |
| PHILLIPPI, LLC, STEVEN B. | : | |
| KANTROWITZ | | |

Appeal from the Order Entered March 20, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2016-29578

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED MARCH 06, 2020**

Kathryn S. Garges appeals from the entry of summary judgment in favor of Genisys Credit Union, Cumis Insurance Society, Inc., Larry S. Eisman, Kantrowitz & Phillippi, LLC, and Steven B. Kantrowitz ("Appellees"). Garges claims the court erred in granting Appellees' motions for summary judgment on her Dragonetti Act[1] and abuse of process claims. We affirm.

Garges' claims arise from a prior action that USA Federal Credit Union ("Credit Union")[2] filed against her ("Underlying Action"). Garges had three accounts with the Credit Union—a Credit Card Account, a "Kwik Draw Line of

---

[1] 42 Pa.C.S.A. §§ 8351–55.

[2] Genisys Credit Union is the successor in interest to USA Federal Credit Union.

Credit," and a vehicle loan. In 2002, after Garges missed payments on the credit card and Kwik Draw Line of Credit, Garges and the Credit Union exchanged communications in an effort to reach an agreement underwhich Garges could pay off the two accounts. In the 2002 communications, Garges admitted that she was unable to repay the loans, and sought alternate payment schedules. ***See, e.g.,*** Motion for Summary Judgment of Defendant Credit Union at Exh. G, Letter from Garges to Eisman dated Dec. 13, 2002 (stating that Garges' accounts had been past due for a "year or so"). Also in 2002, the Credit Union repossessed Garges' vehicle. Answer with New Matter of Credit Union, filed Aug. 10, 2017, at ¶ 15.

In 2005, the Credit Union filed a Complaint, asserting Garges was delinquent in payment on the two credit obligations. The Complaint sought $11,156.14. Larry S. Eisman, Esquire, represented the Credit Union and signed the Complaint.

Garges filed an Answer with New Matter and Counterclaim. Steven B. Kantrowitz, of the firm Kantrowitz & Phillippi, LLC, entered an appearance on behalf of the Credit Union on the Counterclaim. In the Answer, Garges stated that she "made many timely payments" but admitted that she "did not repay the entire ending balance on either" account. ***USA Fed. Cred. Union v. Garges***, No. 2005-02231, Defendant's Answer to Plaintiff's Complaint , New Matter, and Counterclaim, at ¶ 4. In her New Matter, Garges averred that she had not received any correspondence or telephone calls from the Credit Union since December 2002, and had not received any statements since February

2003. She further asserted counterclaims against the Credit Union claiming that the Credit Union's conduct: violated the commercial standard of fair dealing applicable to contracts involving secured transactions under the Pennsylvania Uniform Commercial Code; constituted unfair or deceptive debt collection practices in violation of the Pennsylvania Fair Credit Extension Uniformity Act; and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

Both sides filed dispositive motions. In July 2008, the trial court granted the Credit Union's motion for summary judgment on Garges' Counterclaims and denied Garges' cross motion for summary judgment.

The docket for the Underlying Action contains some discovery motion practice in the summer of 2009, but then no activity from October 2009 through October 2014. Trial Court Opinion, filed July 2, 2019, at 2 ("1925(a) Op."). In October 2014, the trial court issued a Notice to Terminate pursuant to Local Rule 1901 of the Montgomery County Local Rules of Judicial Administration. The Notice informed the parties that the court intended to terminate the case for lack of docket activity for at least two years, but that it would not terminate the case if any party filed a statement of intention to proceed within 60 days. No party filed a statement of intention to proceed.

On January 5, 2015, the court marked the case "terminated" on the docket. On January 20, 2015, Garges filed a petition to reinstate, seeking to reinstate her counterclaim or, in the alternative, all claims. The trial court

denied the petition to reinstate, and this Court affirmed. The Pennsylvania Supreme Court denied a petition for allowance of appeal.

In December 2016, Garges filed a Complaint in the present action. In July 2017, she filed an Amended Complaint, in which she asserted various claims including a wrongful initiation of civil proceedings claim under the Dragonetti Act against Genisys and Eisman, a wrongful continuation and use of legal proceedings under the Dragonetti Act against all Appellees, and a common law abuse of process claim against all Appellees.[3]

In support of her Dragonetti Act claim against the Credit Union and Eisman, Garges claimed the Credit Union filed the Underlying Lawsuit for the improper purpose of obtaining money from Garges that she did not owe. She also contended that the suit was in retaliation for her 2002 objections to allegedly unlawful conduct, and that Eisman knew or should have known the lawsuit was initiated for an improper purpose. In support of her Dragonetti Act claim against all Appellees, Garges claimed, *inter alia*, that Appellees knew or should have known within a reasonable time of the filing of her Answer with New Matter and Counterclaim that the Credit Union lacked probable cause for its claims and Appellees acted with gross negligence and without probable cause in continuing the lawsuit. Garges further claimed that Appellees' actions constituted an abuse of process.

---

[3] Garges also asserted claims of malicious misuse of civil proceedings, libel, slander, and false light publicity. **See** Amended Complaint, at ¶¶ 80-103. The trial court granted summary judgment as to these claims, and Garges does not challenge the summary judgment order as to these claims on appeal.

Her Amended Complaint also included allegations that Appellees refused to dismiss or withdraw their claims in 2015, asserting that if they had done so she could have appealed the order granting summary judgment as to her counterclaims. She further claims that the parties entered settlement discussions in 2015, but that a claim's adjuster for Kantrowitz "insisted that Garges resubmit her complete evidence and legal arguments in the Lawsuit to the claims adjuster." Amended Complaint at ¶ 43.

In January 2019, Appellees filed motions for summary judgment and Garges filed a partial motion for summary judgment. In March 2019, the trial court granted Appellees' motions and denied Garges's motion, and entered summary judgment in favor of Appellees on all claims. Garges filed a timely notice of appeal.

Garges raises the following issues on appeal:

> 1. Did the court err, as a matter of law or because there were genuine contested material issues of fact, in denying Garges's partial motions for summary judgment under the Dragonetti Act against the Credit Union for procurement and initiation of the underlying action and against Eisman for initiation of the underlying action, and in granting each of [Appellees'] motions for summary judgment on the same claims?
>
> 2. Did the court err, as a matter of law or because there were genuine contested material issues of fact, in denying Garges's partial motions for summary judgment against each of the Credit Union, Eisman, the Insurance Company, the Kantrowitz firm, and Kantrowitz for continuation and use of the underlying action in violation of the Dragonetti Act, and in granting each of [Appellees'] motions for summary judgment on the same claims?

3. Did the court err, as a matter of law or because there were genuine contested material issues of fact, in granting the motions for summary judgment of each of the Credit Union, Eisman, the Insurance Company, the Kantrowitz firm, and Kantrowitz against Garges's claims for common law abuse of process in the underlying action?

Garges' Br. at 3-4.

Garges challenges the grant of summary judgment. "[S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Nicolaou v. Martin*, 195 A.3d 880, 891 (Pa. 2018) (citing Pa.R.Civ.P. 1035.2(1)). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Id.* We reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. *Id.* at 892. Because the issue of whether there is a genuine issue of material fact is a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

In her first two issues, Garges claims that the court erred in granting summary judgment as to her Dragonetti claims.

The Dragonetti Act provides as follows:

(a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than

that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a).

To establish a claim under the Dragonetti Act, a plaintiff must prove all of the following:

(1) The defendant has procured, initiated, or continued the civil proceedings against him.

(2) The proceedings were terminated in his favor.

(3) The defendant did not have probable cause for his action.

(4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5) The plaintiff has suffered damages as set forth in section 8353.

***Perelman v. Perelman***, 125 A.3d 1259, 1263-64 (Pa.Super. 2015) (quoting 42 Pa.C.S.A. § 8354).

Probable cause for the procurement, initiation, or continuation of civil proceedings exists if the defendant "reasonably believe[d] in the existence of the facts upon which the claim is based," and either:

(1) reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

*Id.* at 1264 (quoting 42 Pa.C.S.A. § 8352). Further, "an action for wrongful use of civil proceedings pursuant to the Dragonetti Act does not require a *prima facie* showing of actual malice, but such action requires proof that the defendant acted in a grossly negligent manner." ***Id.*** (quoting ***Hart v. O'Malley***, 781 A.2d 1211, 1218 (Pa.Super. 2001)).

In her first issue, Garges claims the trial court erred in granting summary judgment as to her Dragonetti Act claim against the Credit Union and Eisman. She argues that although she admitted she owed debt in 2002, she did not admit that she owed debt in 2005. She claims the Credit Union and Eisman filed with the complaint, and produced in discovery, falsified versions of the card terms and conditions. She further claims that her car was damaged during repossession and, although she had not known it had been damaged, Appellees should have been aware. She further claims the Credit Union "waived by laches and estoppel all amounts it claimed were owing by deliberately ceasing collection activity and communications with Garges other than sending Garges quarterly statements which showed no balances owing and purporting to be statements of all her accounts." Garges' Br. at 22. Garges states Eisman's actions did not have a reasonable basis in law or fact because they included making a record of false documents, and he verified the Complaint and discovery on his own knowledge, not on good faith belief that he relied on his client. Garges notes that the Credit Union failed to withdraw

or proceed with the case, and did not attempt to meet its burden of proof in arbitration. Garges further claims the trial court opinion "implicitly credits [Appellees'] stated defense" that they decided not to proceed because it became apparent any judgment would be uncollectible due to lack of assets. *Id.* at 25. She claims there was no evidence to support this defense.

The trial court concluded Garges failed to come forward with evidence sufficient to create a genuine dispute as to whether Appellees, including the Credit Union and Eisman, acted in a grossly negligent manner or without probable cause. It found that the Credit Union's collection complaint was supported by probable cause, noting Garges admitted she had outstanding accounts with the Credit Union and never asserted she paid them in full. 1925(a) Op. at 6. The court noted that Garges "contended she was relieved of any obligation to pay them, primarily for three reasons—that [the Credit Union] was unable to produce documentation related to the accounts, that Ms. Garges debts were fully satisfied because her vehicle was damaged during repossession by [the Credit Union], and that [the Credit Union] had waived its right to collect the balances due by discontinuing the sending of periodic statements and/or by sending statements showing zero balances." *Id.* at 6-7. The court concluded that "these arguments are not so clearly dispositive as to establish that [Appellees] acted in a grossly negligent manner or without probable cause in pursuing and continuing" the collection action. *Id.* at 7.

The trial court stated the following as to the defenses:

First, Ms. Garges argues that [Appellees] lacked probable cause or were grossly negligent because they failed to produce in the Underlying Action certain documentation relating to the credit accounts. This failure does not establish that [the Credit Union's] claims were wholly lacking in merit. Ms. Garges did not deny the existence of the accounts and did not assert that she had paid them in full. [The Credit Union] could readily have established its claim without such documentation—for example, by showing that Ms. Garges made periodic charges on her credit card account or specific draws on her line of credit.

Next, Ms. Garges argues that [Appellees] lacked probable cause to pursue the Underlying Lawsuit because of alleged damage caused to her car when [the Credit Union] repossessed it. Specifically, Ms. Garges contends that [the Appellees] were aware

> that there was possible damage to Garges's car caused in course of the repossession but did not pursue this information and therefore never met [their] legal obligation to obtain the true value on sale of the car, which created an unrebutted presumption under applicable law that nullified any legal right to claim amounts owing on [their collection] claim." [Pl. Garges's Br. in Supp. of Her Mot. for Partial Summ. it. Against Def Genisys Credit Union [hereinafter, "Garges Br."], at 20.]

Despite this contention, Ms. Garges failed to present evidence, in either the Underlying Action or the present case, that her car was damaged during its repossession. More importantly, the contention that any such damage would create a "presumption" that all debts owed by her to USA were somehow "nullified" lacks any legal support and is contrary to common sense.[5]

> [5] While Ms. Garges could have plausibly argued that her indebtedness was reduced by the monetary amount of any damage caused to the vehicle, that is not the argument that she made in the Underlying Action or the present case.

Finally, Ms. Garges argues that [the Credit Union] "deliberately ceased collection activity and communications with Garges after January, 2003, other than sending Garges

quarterly statements which showed no balances owing and purported to be statements of all her accounts, which waived any rights by laches and estoppel." (Garges Br., at 20-21.) As noted [above], Ms. Garges acknowledged in the Underlying Action that she had not paid her accounts with [the Credit Union] in full. She thus does not assert that the zero-balance statements sent by [the Credit Union] were accurate. Rather, she contends that by sending such statements, [the Credit Union] waived its right to collect the unpaid amounts. Ms. Garges cites no authority to support her waiver argument. To the contrary, if Ms. Garges was aware, as she apparently acknowledges, that the statements were not accurate, then there is no basis for her to argue that she was somehow lulled into complacency or that [the Credit Union] otherwise waived its right to collect the balance actually owed. In short, this defense, like Ms. Garges' other defenses, is not so clearly dispositive as to support a claim of gross negligence or lack of probable cause on the part of [Appellees].

It is also relevant that Ms. Garges filed a Cross-Motion for Summary Judgment in the Underlying Action, seeking dismissal of [the Credit Union's] claims against her, and that the Cross-Motion was denied. (Genisys Mot., Ex. J, L.) Although it is not clear whether the denial of a defendant's motion for summary judgment establishes *per se* that there was probable cause to pursue the claim against the defendant, the Superior Court has made clear that such denial of summary judgment is an important factor in making the probable-cause determination. ***See Meiskin v. Howard Hanna Co.***, 590 A.2d 1303, 1307 (Pa. Super 1991) (holding that existence of probable cause was "confirmed" by denial of summary judgment in the underlying action).

1925(a) Op. at 7-9.

We agree with the trial court's analysis and its finding that no genuine issues of material fact exists, and conclude the trial court did not err or abuse its discretion. As outlined by the trial court, the evidence establishes Appellees

- 11 -

did not act in a grossly negligent manner or without probable cause in initiating the underlying lawsuit.

In her second issue, Garges argues that the trial court erred because its analysis of the Dragonetti Act did not separate her claims in Count 1 of her Complaint, which dealt with the initiation of the lawsuit, from Count III, which dealt with continuation of the lawsuit. She claims Appellees made "at least four separate decisions not to withdraw the claims prior to their dismissal." Garges' Br. at 28. Garges claims the Credit Union "knew there was unusual inactivity on its claims and that Eisman was delaying and trying to coerce settlement and that the inactivity was tied to Garges's ability to appeal the interlocutory summary judgment order against her counterclaims." *Id.* at 30. She claims the insurance company worked with Kantrowitz to "deliberately deceive Garges and discourage her appeal and attempts to settle the case by ambiguous representations of authority to settle the Dragonetti Act claims, and by requiring that Garges re-submit all her evidence and legal arguments to the claims adjustor in order to discuss settlement." *Id.* at 31.

This claim is meritless. As discussed above, the Underlying Action was supported by probable cause and Appellees did not act with gross negligence in initiating, and continuing to pursue, the claims. That Garges raised affirmative defenses does not alter this. Further, that the Credit Union did not dismiss or withdraw its claims does not impact the analysis here, as probable cause supported the initiation and continuation of the proceedings.

In her third claim, Garges argues the trial court erred in granting summary judgment on her common law abuse of process claim. She argues she presented sufficient evidence to show Appellees violated the legal process standard for an improper purpose, including "coercing [her] into paying money she did not legally owe, harassing and maliciously injuring Garges, avoiding exposure of falsehoods and false documentation, coercing settlement, and preventing Garges from obtaining consideration of the merits of her counterclaim." Garges Br. at 35. She claims the Credit Union and its attorneys "refused to withdraw or agree to dismissal of its claims" and "continued to act to achieve its improper purposes by opposing Garges throughout he attempted appeal." *Id.* at 36. She claims that, contrary to the court's conclusion, she did not have a way to force the case to proceed. She argues Appellees told her that they were going to proceed. She also notes that the Appellees did not agree to dismiss the case in the settlement conference that occurred after she filed her motion to reinstate.

To establish a claim for abuse of process, the plaintiff must show that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *P.J.A. v. H.C.N.*, 156 A.3d 284, 288 (Pa.Super. 2017) (quoting *Werner v. Plater–Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002)). "Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id.* (quoting *Werner*, 799 A.2d at 785). Further, "the

gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question." *Id.* (quoting *Werner*, 799 A.2d at 785).

The trial court concluded that the Credit Union is not liable for abuse of process where it chose to allow the case "die a natural death through administrative termination," rather than discontinuing the case. 1925(a) Op. at 10. It pointed out that Garges could have "invoked procedures to achieve an earlier disposition of [the Credit Union's] claims." *Id.* She could have sought consent to the filing of a trial praecipe, and, if the Credit Union refused, could have sought a conference and requested the case be deemed ready for trial. *Id.* Alternately, she could have sought dismissal for lack of prosecution by filing a motion for *non pros*. *Id.* The court concluded that "Garges is not faulted for failing to move the case forward. But she cannot argue that [the Credit Union], in an abuse of legal process, delayed her ability to appeal from a final judgment when she had the means available to move the case forward herself." *Id.* at 10-11.

We agree, and conclude the trial court did not err or abuse its discretion. Garges has not established a genuine issue of material fact regarding any element of the abuse of process claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/20