J-A20039-15

2015 PA Super 224

| | |
|---|---|
| JEFFREY E. PERELMAN, AND JEP MANAGEMENT, INC., AS EQUITABLE SUBROGEE OF JEFFREY E. PERELMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RAYMOND G. PERELMAN; DILWORTH PAXSON, LLP: JOSEPH JACOVINI; LAWRENCE MCMICHAEL MARJORIE OBOD; RONALD PERELMAN; HAINES & ASSOCIATES; CLIFFORD E. HAINES; BUCKLEY, BRION, MCGUIRE, MORRIS & SOMMER LLP; ANDREW C. ECKERT; SIGMUND FLECK; GUNSTER, YOAKLEY & STEWART, P.A.; AND GEORGE S. LEMIEUX | |
| APPEAL OF: DILWORTH PAXSON LLP, JOSEPH JACOVINI, LAWRENCE MCMICHAEL AND MARJORIE OBOD | No. 61 EDA 2015 |

Appeal from the Order Entered on October 30, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No.: 2013-27085

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

OPINION BY WECHT, J.:                    **FILED OCTOBER 27, 2015**

The law firm of Dilworth Paxson, LLP, and Dilworth attorneys Joseph Jacovini, Lawrence McMichael, and Marjorie Obod (collectively, "Dilworth") appeal the trial court's order denying their preliminary objections to the complaint of Jeffrey E. Perelman and JEP Management, Inc. (collectively, "Jeffrey").  Jeffrey has sued numerous parties, including Dilworth, for wrongful prosecution under the Dragonetti Act, 42 Pa.C.S. §§ 8351-55, alleging Dragonetti violations associated with claims brought in several other

matters in state and federal court concerning certain business dealings between Jeffrey and his father, Raymond G. Perelman ("Raymond"). In a federal action, Jeffrey filed an unsuccessful motion for sanctions under Fed.R.Civ.P. 11, based upon the same alleged litigation misconduct that underlies the instant Dragonetti claim. The federal court denied Jeffrey's motion. Dilworth now maintains that the trial court erred in overruling Dilworth's preliminary objections to the instant Dragonetti complaint, which objections were based upon principles of *res judicata* and/or collateral estoppel arising from the federal court's denial of Rule 11 sanctions. The trial court in this matter ruled that the federal court's Rule 11 order did not preclude the instant claims. We affirm.

We begin by summarizing the lawsuit that Raymond initiated in the Philadelphia Court of Common Pleas (hereinafter, "the State Action") and its outcome, because it underlies the Dragonetti claims directly at issue in this matter. In so doing, we distill from a tremendously complex history of dealings and litigations between Jeffrey and Raymond the following account from our 2011 memorandum, in which we affirmed the trial court's dismissal of Raymond's complaint in the State Action:

> [Raymond] brought [suit] against [Jeffrey] in October 2009 alleging breach of an oral contract, fraud, conversion, express trust, resulting trust, and unjust enrichment requiring a constructive trust. The lawsuit is premised upon the following allegations by [Raymond]. The parties began to discuss transferring a portion of [Raymond's] business interests to [Jeffrey] in 1989 . . . . At the time, [Raymond] agreed to convey his interest in several businesses to [Jeffrey] with, according to [Raymond], certain conditions. Those conditions

- 2 -

included that [Raymond] would transfer the businesses for the assumption of certain debt; the transfer would not incur any tax liability; [Jeffrey] would control and operate the businesses during his lifetime; ownership of the businesses would be divided evenly between [Jeffrey] and a trust created for the sole benefit of [Jeffrey's] children, and [Jeffrey's] wife would renounce all of her marital interest in the transferred businesses.

Corporations controlled by [Raymond] transferred their business interests to corporations formed by [Jeffrey]. In addition, in at least one instance, a corporation operated by [Raymond] sold stock to a trust of which [Jeffrey] was the named beneficiary. The trust was created for the benefit of [Jeffrey], with [Jeffrey's] children as contingent beneficiaries. The trust document was executed on January 24, 1990. On that same date, [Jeffrey's] wife also executed a renunciation agreement whereby she renounced some, but not all, of her interest in the relevant businesses. [Raymond] alleges that he only recently learned that the trust and renunciation documents did not conform to his instructions . . . .

*Perelman v. Perelman*, 953 EDA 2010, slip op. at 1-2 (Pa. Super. Sept. 1, 2011).

Jeffrey filed preliminary objections to Raymond's complaint in the State Action, which the trial court sustained without explanation by order entered on March 25, 2010. On or about April 1, 2010, Raymond appealed the trial court's ruling. In its opinion pursuant to Pa.R.A.P. 1925(a), the court explained that it had determined that Raymond's claims were barred by the parol evidence rule because the documents governing the twelve transactions at issue, which contained merger clauses, did not indicate that any of Raymond's claimed entitlements were part of the consideration for the transactions in question. Thus, the merger clauses in the contracts governing the transactions precluded resort to parol evidence to establish

- 3 -

the existence of any overarching agreement consistent with Raymond's claims. On appeal, this Court affirmed on the same basis. *Id.* at 7-16.

Mere hours after Raymond commenced the State Action, Jeffrey had started his own parallel action by filing a complaint concerning the same subject matter in federal court (hereinafter, "the Federal Action"). In his answer to Jeffrey's complaint in the Federal Action, Raymond included compulsory counterclaims that were substantively identical to the claims he had raised as plaintiff in the State Action.

While Raymond's appeal in the State Action was pending, Jeffrey filed a motion to dismiss Raymond's counterclaims in the Federal Action, arguing that the trial court's ruling in the State Action had preclusive effect over the parallel counterclaims in the Federal Action. The trial court in the instant matter has provided a useful summary of the events that followed:

> On May 18, 2010, Jeffrey petitioned the [district court] to impose sanctions against Raymond and [Dilworth] pursuant to [Rule 11]. [Dilworth] responded to the motion for sanctions on June 8, 2010. On June 25, 2010, the [district court] denied the motion for sanctions after reviewing "the Plaintiffs' and Counterclaim Defendants' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure, the defendants' opposition, and the plaintiffs' reply thereto." This order was not appealed. Nevertheless, on May 2, 2013, the [district court] granted Jeffrey's motion to dismiss the counterclaims.
>
> On August 30, 2013, after the resolution of all underlying cases filed by Jeffrey and Raymond, [Jeffrey] filed a Praecipe for Summons against Raymond, [Dilworth], and numerous other defendants. On October 7, 2013, [Jeffrey] filed a Complaint. Subsequently, on December 6, 2013, [Jeffrey] filed an Amended Complaint. This Amended Complaint sought relief under the Dragonetti Act with respect to all defendants. In regard to

[Dilworth] specifically, the Amended Complaint alleged that the Dilworth Defendants were liable under the Dragonetti Act for their involvement with Raymond's [State Action], the Superior Court appeal of that action's dismissal, and the pursuit of the original counterclaims and proposed amended counterclaims in the Federal Action.

On December 26, 2013, [Dilworth] filed Preliminary Objections. [The trial court] overruled the Preliminary Objections by its Order dated September 10, 2014.  On September 24, 2014, [Dilworth] filed an application to amend [the trial court's] September 10, 2014 Order to permit an immediate appeal pursuant to 42 Pa.C.S. § 702(b).  [The trial court] denied the application to amend [its] Order to permit an immediate appeal by its Order dated October 30, 2014.  Subsequently, on November 8, 2014, [Dilworth] filed a Petition for Review with the Superior Court at Docket Number 134 EDM 2014.  The Superior Court entered an Order dated January 8, 2015, granting the Petition for Review and directing that the matter proceed before the Superior Court as an appeal from the September 10, 2014 Order of [the trial court] overruling [Dilworth's] Preliminary Objections.

Trial Court Opinion ("T.C.O."), 2/19/2015, at 3-4 (citations omitted).[1]

Before this Court, Dilworth raises the following issue:

Whether, in this case of first impression, the trial court committed an error of law in denying Dilworth's preliminary objections to Jeffrey's duplicative and retaliatory claim for wrongful use of civil proceedings, after he already fully litigated—and lost—his factual allegations and this issue in the United States District Court, [which] found that the compulsory counterclaims filed by Dilworth were colorable.

Brief for Dilworth at 4.

---

[1]    The trial court did not direct Dilworth to file a concise statement of the error complained of on appeal pursuant to Pa.R.A.P. 1925(b).

We begin by noting our standard of review of a trial court order sustaining or denying preliminary objections:

> "Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." ***De Lage Landen Fin'l Servs., Inc., v. Urban P'ship, LLC***, 903 A.2d 586, 589 (Pa. Super. 2006).

> > "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

> ***Hykes v. Hughes***, 835 A.2d 382, 383 (Pa. Super. 2003) (citations omitted).

***Haun v. Comm. Health Sys., Inc.***, 14 A.3d 120, 123 (Pa. Super. 2011) (citations modified).

There are several additional legal standards that must be related to frame the analysis to follow. First, to prevail on a claim under the Dragonetti Act, a plaintiff must establish the following statutory elements:

> **(a) Elements of action.—**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

(1)     he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2)     the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351.

In an action brought pursuant to this subchapter the plaintiff has the burden of proving . . . that:

(1)     The defendant has procured, initiated, or continued the civil proceedings against him.

(2)     The proceedings were terminated in his favor.

(3)     The defendant did not have probable cause for his action.

(4)     The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5)     The plaintiff has suffered damages as set forth in section 8353[2] . . . .

42 Pa.C.S. § 8354.

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable

---

[2]     Among the categories of damages that may be awarded for a violation are "[t]he harm to [the plaintiff's] reputation by any defamatory matter alleged as the basis of the proceedings," "the expense, including any reasonable attorney fees, that he has reasonably incurred in defending himself against the proceedings," [a]ny emotional distress that is caused by the proceedings," and "[p]unitive damages according to law in appropriate cases."  42 Pa.C.S. § 8353.

cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

> (1)      reasonably believes that under those facts the claim may be valid under the existing or developing law;

> (2)      believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

> (3)      believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352.

"[A]n action for wrongful use of civil proceedings pursuant to the Dragonetti Act does not require a *prima facie* showing of actual malice, but such action requires proof that the defendant acted in a grossly negligent manner." **Hart v. O'Malley**, 781 A.2d 1211, 1218 (Pa. Super. 2001). The application of section 8352 to attorneys of record is somewhat more circumscribed than as to the parties that they represent:

> Insofar as attorney liability is concerned, "as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case." **Morris v. DiPaolo**, 930 A.2d 500, 505 (Pa. Super. 2007). "Lawyers can safely act upon the facts stated by their clients." **Meiksin v. Howard Hanna Co., Inc.**, 590 A.2d 1303, 1307 (Pa. Super. 1991).

**Keystone Freight Corp. v. Stricker**, 31 A.3d 967, 973 (Pa. Super. 2011) (citations modified). That being said, "the plaintiff in a wrongful use of civil proceedings action need not obtain the defendant's outright 'confession' of improper purpose; an improper purpose may be inferred where the action is

filed without justification." ***Gentzler v. Atlee***, 660 A.2d 1378, 1385 (Pa. Super. 1995). Thus, a claim for wrongful use of civil proceedings will lie "if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause." ***Id.***

At issue in this matter is the preclusive effect under the instant circumstances, if any, of a federal court's ruling denying sanctions under Rule 11. That rule provides, in relevant part, as follows:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> * * * *
>
> **(c) Sanctions.**
>
>> **(1)** ***In general.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. . . .

**(2)     *Motion for Sanctions.*   A motion for sanctions must . . . describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.**

Fed.R.Civ.P. 11.

Finally, because this case presents the question whether collateral estoppel/issue preclusion bars a claim under the Dragonetti Act when it is based upon the same allegations asserted in a Rule 11 motion that a federal court has denied, we must review the standard for collateral estoppel:

Collateral estoppel applies if (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

Collateral estoppel is also referred to as issue preclusion.  It is a broader concept than *res judicata* and operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit.

***Catroppa v. Carlton***, 998 A.2d 643, 646 (Pa. Super. 2010) (quoting

***Inbollingo v. Maurer***, 575 A.2d 939, 940 (Pa. Super. 1990)) (citations

omitted).

As set forth, *supra*, in the Federal Action, the district court denied Jeffrey's motion for sanctions. In the ruling at issue in the instant appeal, however, the trial court denied Dilworth's preliminary objections in the nature of a demurrer alleging that the district court's ruling estopped Jeffrey from bringing a Dragonetti Act claim based upon the same allegations raised in his unsuccessful Rule 11 motion.[3]

The trial court explained its reasoning for denying Dilworth's preliminary objections as follows:

_____

[3] Jeffrey urges this Court to affirm without addressing the substantive merits of Dilworth's preliminary objections upon the basis that Dilworth should have presented its collateral estoppel defense in a pleading as new matter under Pa.R.C.P. 1030 rather than as a preliminary objection under Pa.R.C.P. 1028. Jeffrey argues that Rule 1028 precludes consideration of documents outside the pleadings, and contends that the trial court therefore acted improperly when it considered documents pertaining to the prior law suits underlying Jeffrey's Dragonetti claims. *See* Brief for Jeffrey at 18-19 (citing, *inter alia*, ***220 P'ship v. Phila. Elec. Co.***, 650 A.2d 1094, 1097 (Pa. Super. 1994)). Dilworth responds that the documents in question were matters of public record, and, inasmuch as those cases were discussed at length in Jeffrey's complaint, they could properly be considered by the trial court in the context of a demurrer. Reply Brief for Dilworth at 6-8 (citing, *inter alia*, ***Del Turco v. Peoples Home Sav. Ass'n.***, 478 A.2d 456, 461 (Pa. Super. 1984)). We agree with Dilworth. References to the earlier cases, being necessary to the assertion of a Dragonetti claim in the first instance, are made repeatedly throughout Jeffrey's operative complaint. Consequently, as per ***Del Turco***, Dilworth had the prerogative to raise collateral estoppel by reference to those cases in its preliminary objections. ***See Del Turco***, 478 A.2d at 461 ("It is settled . . . that[,] **unless the complaint sets forth in detail, either directly or by reference, the essential facts and issues pleaded by the prior suit**, the affirmative defense of *res judicata* must be raised in a responsive pleading under the heading of new matter and not by preliminary objection." (emphasis added)).

[F]ederal sanctions are not in derogation of state common[-]law remedies; indeed both may be sought based upon identical factual and procedural events. ***Werner v. Plater-Zyberk***, 799 A.2d 776, 785 (Pa. Super. 2002). Moreover, "the denial of sanctions under federal Rule 11 does not foreclose the assertion of a subsequent suit for malicious prosecution." ***Id.*** (citing ***Lightning Lube, Inc., v. Witco Corp.***, 4 F.3d 1153, 1196 (3d Cir. 1993)). In addition, "the scope of a Rule 11 hearing is much narrower than a full civil proceeding in state court." ***Amwest Mortg. Corp. v. Grady***, 925 F.2d 1162, 1165 (7th Cir. 1991); ***see*** Fed.R.Civ.P. 11, Notes of 1983 Advisory Committee on Rules ("[T]he court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of court, and then only in extraordinary circumstances.").

T.C.O. at 5 (citations modified).

In the instant case, [Dilworth] argue[s] that the federal court's June 25, 2010 Order dispositively addressed the same arguments in a Rule 11 context that Jeffrey now advances in the context of his Dragonetti action. After reciting the standard for Rule 11, the Order outlined Jeffrey's arguments. After outlining Jeffrey's arguments, the [district court], without commenting specifically on any of Jeffrey's arguments, stated: "Sanctions, however, are not warranted in this case. Regardless of [his] arguments' ultimate merit, Raymond . . . presents a colorable argument in support of his counterclaims. Furthermore, Raymond . . . appealed the state trial court's order [in the State Action], and that order could be reversed by the Superior Court of Pennsylvania."[4]

The June 25, 2010 Order does not elaborate on its single statement that [Raymond's] counterclaims presented a "colorable argument." Consequently, the Order does not address the particular merits of any of Jeffrey's arguments. Raymond argues in his Preliminary Objections that because the federal court identifies the counterclaims as being supported by colorable arguments, . . . the Order dispositively rejected all of

---

[4]    As noted *supra*, this Court ultimately affirmed the trial court's ruling in the State Action.

Jeffrey's arguments in favor of sanctions. Because Jeffrey advances the same arguments in his instant Dragonetti claims against [Dilworth], and the federal court declined to impose sanctions under Rule 11 [in the Federal Action], [Dilworth] argues that the doctrine of collateral estoppel prohibits Jeffrey from raising the same arguments in a Dragonetti context. It bears repeating that "the denial of sanctions under federal Rule 11 does not foreclose the assertion of a subsequent suit for malicious prosecution." *Werner*, 799 A.2d at 785. Both Rule 11 sanctions and state suits for abuse of process may be sought predicated upon the same underlying factual and procedural events. *Id.*

The June 25, 2010 Order [in the Federal Action] merely stated that Raymond had advanced colorable arguments in support of his counterclaims; the federal court declined to analyze each argument individually. Thus, given the facts of this case, and the legal standard which dictates that all doubts as to whether a demurrer should be sustained are resolved in favor of overruling preliminary objections, [the trial court] properly overruled [Dilworth's p]reliminary [o]bjections. *Cf. Kegerise v. Susquehanna Twp. Sch. Dist.*, No. 1:CV-14-0747, 2015 WL 106528, at *15 (M.D. Pa. Jan. 7, 2015).

T.C.O. at 7-8 (record citations omitted).

Against this backdrop, we now turn to Dilworth's argument. Dilworth contends that "Jeffrey cannot, as a matter of law, prove these necessary elements [of a Dragonetti complaint], because the federal court has already found that the claims at issue are 'colorable.'" Brief for Dilworth at 14 (emphasis omitted). In a lengthy argument in support of the application of collateral estoppel, which appears to conflate questions that would arise only if this case went to trial and the narrower question whether this case should go to trial in the first instance, Dilworth addresses each of the five elements necessary to establish collateral estoppel. However, only Dilworth's

arguments as to elements one, four, and five are at issue because Jeffrey does not dispute that the second and third elements, respectively a final judgment on the merits and a commonality of parties between the federal and state proceedings, are satisfied in this case. *See* Brief for Jeffrey at 20. Furthermore, because the failure to establish any one element precludes the application of collateral estoppel, and because we find that Dilworth cannot satisfy at least one element of the test, we focus solely upon that one element. Specifically, like the trial court, we agree with Jeffrey that he did not have "a full and fair opportunity to litigate" the substance of his Dragonetti claims in the Federal Action under Rule 11. *See Catroppa*, 998 A.2d at 646.[5]

Dilworth argues that Jeffrey chose the Federal Action as the venue to challenge Dilworth's good faith in commencing the State Action, and the existence of probable cause for doing so. Dilworth correctly notes that Jeffrey filed "a substantial memorandum of law that articulated the facts to support his request," which facts are materially the same as those upon which Jeffrey bases the instant Dragonetti action. Brief for Dilworth at 22. Dilworth also would have this Court reject Jeffrey's claim that the absence of

---

[5] For purposes of discussion, we assume, but need not decide, that the substance of the respective claims was materially the same. However, unless Jeffrey had a full and fair opportunity to litigate those claims in federal court, the identity of claims is of no moment to the question of issue preclusion.

discovery in connection with his Rule 11 motion by itself precludes any finding that he had a full and fair opportunity to litigate the assertions at issue in his Dragonetti complaint. Dilworth challenges the proposition that such discovery is required to establish a full and fair opportunity to litigate, not least because "the determination of probable cause and gross negligence can be made as a matter of law on preliminary objection." *Id.* at 23.

In response, Jeffrey notes that discovery is available in Rule 11 proceedings only by leave of court upon a showing of extraordinary circumstances. Brief for Jeffrey at 21 (citing Fed.R.Civ.P. 11 (1983 advisory committee notes)). Jeffrey submits that it is precisely upon this basis that federal courts have concluded that Rule 11 proceedings do not preclude a later malicious prosecution claim. *Id.* at 22 (citing *Lightning Lube*, 4 F.3d at 1196)).

In further support of his alleged inability even to seek leave of court to conduct relevant discovery, Jeffrey submits the following account of the condensed procedural chronology pertaining to his Rule 11 motion. First, on March 25, 2010, ten days after the commencement of discovery in the Federal Action, the court of common pleas in the State Action sustained Jeffrey's preliminary objections and dismissed Raymond's complaint with prejudice. However, under Rule 11's notice requirement, Jeffrey could not file a motion for sanctions based upon that occurrence until he had furnished notice to Raymond of his intent to seek sanctions and waited at least twenty-one days thereafter to file the Rule 11 motion with the district court.

Furthermore, he could not seek discovery in the interim because the whole point of the twenty-one-day safe harbor is to allow the non-moving party to cure whatever action or omission comprises the basis for the Rule 11 motion. *See* Fed.R.Civ.P. 11(c)(2) (allowing the non-moving party twenty-one days to withdraw or correct "the challenged paper, claim, defense, contention, or denial").

On April 9, 2010, Jeffrey served his motion upon Dilworth. On April 21, 2010, Jeffrey filed a motion to stay discovery in the Federal Action pending resolution of his motion to dismiss Raymond's counterclaims in that action. On May 18, 2010, the Rule 11 safe harbor period having passed without any curative action being taken by Raymond, Jeffrey filed his Rule 11 motion with the district court. While Raymond had the opportunity to file his opposition to Jeffrey's motion, the district court stayed discovery, in part because an appeal had been filed challenging the common pleas court's dismissal with prejudice of Raymond's complaint in the State Action. Then, on June 25, 2010, with the discovery stay still in effect and the State Action appeal still pending, the district court denied Jeffrey's Rule 11 motion. *See* Brief for Jeffrey at 22-23. In light of this sequence of events, Jeffrey asks "[w]here . . . was there *any* opportunity for Jeffrey to take discovery?" *Id.* at 24.

Dilworth alternatively argues that Jeffrey required no discovery, because all information necessary to determine whether Dilworth had a

colorable claim could be gleaned from the face of the 1990 transaction documents. Jeffrey responds as follows:

> That argument . . . conflates the bases for Jeffrey's Dragonetti claims with the bases for his defense of Raymond's original [c]ounterclaims: *Even if* the face of the decades-old transaction documents decisively determined the impact of the parol evidence rule on Raymond's claims, the merits of *Jeffrey's* Dragonetti claims go far beyond that. The question here is *not* whether Raymond and [Dilworth] presented the [district court] with a "colorable" justification for concluding that Raymond's [Federal Action] pleading, *on its face*, presented viable claims. Rather, the question is whether the *true factual record*—which was *never* explored in discovery in *any* of the underlying suits— would have supported that facially "colorable" argument (whatever it was)—and whether [Dilworth] properly investigated that background.

Brief for Jeffrey at 24 (footnote omitted; emphasis in original). Jeffrey further notes that one of his stated bases for seeking sanctions under Rule 11 was "the lack of factual support for Raymond's [c]ounterclaims," which the district court did not address in its order denying sanctions. *Id.* at 24 n.21. Jeffrey adds that the district court could not have evaluated that argument, given the lack of discovery. *Id.* Jeffrey also highlights relevant questions as to which discovery is necessary to fully measure his Dragonetti claims. For instance, he notes that he has never had the opportunity to explore whether Dilworth acted with gross negligence, without probable cause, or with an improper purpose—and specifically whether it had a reasonable belief in any relevant facts—when it asserted that Raymond had a factual basis to establish an exception to the parol evidence rule or the application of the discovery rule. *Id.* at 25.

We agree. First, the limited case law that we have found addressing this matter, none of it binding under the circumstances of this case,[6] counsels strongly against finding that Jeffrey has had a full and fair opportunity to litigate his Dragonetti claim in the context of Rule 11 proceedings, which are abbreviated by design. In ***Cohen v. Lupo***, 927 F.3d 363 (8th Cir. 1991), for example, the United States Court of Appeals for the Eighth Circuit distinguished Rule 11 sanctions and malicious prosecution claims as follows:

> Federal Rule of Civil Procedure 11 grants a court discretion to discipline parties and counsel for conducting litigation in bad faith or in a frivolous or abusive fashion. Rule 11 is a procedural tool that under the Rules Enabling Act cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. Rule 11 sanctions must be sought by motion in a pending case; there can be no independent cause of action instituted for Rule 11 sanctions. ***Port Drum Co. v. Umphrey***, 852 F.2d 148, 151 (5th Cir. 1988).
>
> On the other hand, the common[-]law tort of malicious prosecution is a claim in its own right under applicable state law. . . . Rule 11 [cannot] abridge the substantive state law of malicious prosecution, nor was it adopted to serve as a surrogate for an action based upon a claim of malicious prosecution resulting from frivolous, harassing, or vexatious litigation.

***Cohen***, 927 F.2d at 365 (citations modified).

---

[6] Although the decisions of the federal district courts and courts of appeal do not bind this Court, their interpretations nonetheless may have persuasive authority on the question presented. ***See Martin v. Hale Prods., Inc.***, 699 A.2d 1283, 1287 (Pa. Super. 1977).

In **Cohen**, a district court awarded $100,000 in Rule 11 sanctions for costs associated with litigation that it found to be conducted "in a manner that escalated costs unnecessarily and vexatiously." **Id.** at 364. Thereafter, the complaining party filed a separate suit in federal district court for state common-law malicious prosecution, seeking recoupment of the remaining costs of defending the earlier suit, which approached $1 million. The district court dismissed that suit upon the basis that the earlier Rule 11 proceeding barred by *res judicata* a subsequent malicious prosecution suit based upon the same underlying facts. The court of appeals reversed, finding as follows:

> [The] malicious prosecution cause of action [did] not raise the same claim that [the Rule 11 proceeding] resolved. [The plaintiff's] malicious prosecution claim was not actually litigated and could not properly [have] been raised and determined in [the Rule 11 proceeding]. . . .
>
> The district court did not decide whether the [underlying] complaint was filed without probable cause, whether [the malicious prosecution defendant] acted with malice, or the amount of damages [the plaintiff] suffered as a result of [the sanctioned] misconduct. Those inquiries are irrelevant under Rule 11, but are the sum and substance of the tort of malicious prosecution.

**Id.** at 365; **see Faigin v. Kelly**, 184 F.3d 67, 79 (1st Cir. 1999) ("The scope of a Rule 11 hearing is generally much more circumscribed than that of a trial or comparable proceeding. Thus, there are legitimate questions as to whether a Rule 11 sanctions order can provide a satisfactory basis for issue preclusion under any circumstances in respect to the merits of a complaint. . . . By their very nature, Rule 11 inquiries are severely

restricted . . ., and it seems odd to extrapolate from them to the subsequent litigation of issues on the merits."); *cf. Klayman v. Barmak*, 602 F. Supp.2d 110, 117-18 (D.D.C. 2009) ("It would be unfair to preclude an issue based on the resolution of a motion for sanctions because sanctions hearings are procedurally dissimilar to trials.  A motion for sanctions does not provide parties an opportunity to litigate fully—conduct discovery, present and cross-examine witnesses—as required for application of collateral estoppel." (citations and internal quotation marks omitted)).

To similar effect, in **Amwest Mortgage**, *supra*, the United States Court of Appeals for the Ninth Circuit identified the absence of discovery under Rule 11, as well as other aspects of that abbreviated process, as determinative against enjoining state malicious prosecution proceedings based upon a Rule 11 order:

> Here, the district court in its denial of Amwest's [Rule 11] motion emphasized the limited nature of the Rule 11 proceeding:  "It was a motion, it was done without discovery, without any other aspects, and it is improper under those limited circumstances for a federal court to enjoin a state court from [malicious prosecution] proceedings that are pending there."
>
> * * * *
>
> [T]he district court stated "[m]otions for sanctions come in here a dime a dozen, and very often they're denied for a number of reasons other than the actual merits.  Unless it is a clear-cut case of egregious behavior, I generally do not impose sanctions."  Injunctive relief is particular inappropriate if the district court's decision **may possibly be based on grounds other than those asserted in the state court action.**

925 F.2d at 1165 (emphasis added).

Recently, in **Kegerise**, 2015 WL 106528, the district court declined to find that collateral estoppel precluded a Dragonetti Act claim when the trial court in the underlying action denied Rule 11 sanctions. The district court first acknowledged that the "improper purpose" language found in Rule 11 is the same as the language used to define an element of a Dragonetti claim, *i.e.*, "that the defendant had an improper purpose in pursuing the underlying action." **Id.** at *15. In the underlying matter, in denying Rule 11 sanctions, the trial court had found that the lawsuit in question was not filed for an improper purpose. Nonetheless, relying upon **Cohen**, **Amwest Mortgage**, and **Lightning Lube**, the district court determined that collateral estoppel did not apply. Reviewing the above three cases and noting the absence of contrary authority cited by the Dragonetti defendant, the court deemed the defendant's argument "too sketchy to accept, especially since they have the burden as the moving party to show that [the Dragonetti plaintiff's] claim must fail." **Id.** at 15.

While none of the above-cited cases is perfectly on point, they nonetheless point in only one direction. Moreover, Dilworth, like the defendant in **Kegerise**, offers no on-point authority to counter the above-cited cases, which appear to reflect a consensus, or at least a majority view, among the courts that have addressed questions similar to those presented in this matter.

Although none of the above-cited cases binds us, it is worth emphasizing that this Court in **Werner** not only favorably cited **Lightning**

- 21 -

*Lube*, *Cohen*, and *Amwest Mortgage*, but also issued a decision with which our analysis in the instant matter harmonizes. At issue in *Werner* was a plaintiff's prerogative to seek damages under the Dragonetti Act for litigation conduct that occurred in federal court. The Dragonetti defendant argued that Rule 11 sanctions in federal court were the appropriate remedy and that the entwinement of the tortious conduct asserted involved questions best suited to resolution in federal court.

This Court disagreed:

> [The Dragonetti defendant] argue[s] that [the plaintiff's] interests would be vindicated adequately via sanctions imposed by the federal district court. However, the damages [the plaintiff] seeks are distinct from the various types of penalties that may be imposed by a court as sanctions against a tortfeasor. Sanctions, including monetary sanctions paid to an adversary in the form of fees or costs, address the interests of the court and not those of the individual. A litigant cannot rely on a sanction motion to seek compensation for every injury that the sanctionable conduct produces. Rather, an injured party must request tort damages to protect his personal interest in being free from unreasonable interference with his person and property.

> \* \* \* \*

> The main objective of Rule 11 is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses. While imposing monetary sanctions under Rule 11 may confer a financial benefit on a victimized litigant, this is merely an incidental effect on the substantive rights thereby implicated. Simply put, Rule 11 sanctions cannot include consequential damages and thus are not a substitute for tort damages. In light of the foregoing, we conclude that [the plaintiff's] right to seek tort damages for his alleged injuries exists **independently of, and in addition to, any rights he might possess to petition for sanctions from the federal district court** . . . .

799 A.2d at 784-85 (emphasis added; citations and internal quotation marks omitted). Reinforcing the obvious import of the above language, we added that "[f]ederal sanctions are not in derogation of state common[-]law remedies, and both may be sought predicated on the same underlying factual and procedural events," citing *Lightning Lube*, *Cohen*, and *Amwest Mortgage* favorably for the proposition that "the denial of sanctions under federal Rule 11 does not foreclose the assertion of a subsequent suit for malicious prosecution." *Id.* at 785. The sum of our reasoning in *Werner*, like the cases upon which we relied, supports our reliance upon those same cases in the instant matter, especially given the lack of contrary Pennsylvania authority.

Our conclusion is buttressed by the constraints of our standard of review. Like the trial court, in reviewing preliminary objections, we are obligated to give the non-moving party the benefit of his own averments of fact and all reasonable inferences that may be derived therefrom. Given the procedural and evidentiary differences between a Rule 11 proceeding and a Dragonetti act trial, including the absence of discovery in the former case, the right to trial by jury that applies in the latter case, and the prospect that dispositive findings of fact that the district court never had the opportunity to make might dictate the outcome of a Dragonetti claim, we find no abuse of discretion or error of law in the trial court's denial of Dilworth's preliminary objections. While we express no opinion whatsoever as to the relative merit of Jeffrey's claims, it is neither for us nor the trial court to do

so now.  At this juncture, Jeffrey is entitled to move forward with his case against Dilworth.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2015