J-S95019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RAYMOND JOSEPH SMOLSKY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SAMUEL C. TOTARO, JR. | |
| | No. 1286 EDA 2016 |

Appeal from the Order Entered March 11, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2015-03051

BEFORE:  STABILE, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED APRIL 19, 2017**

Raymond Joseph Smolsky appeals, *pro se*, from the March 11, 2016 order entered in the Bucks County Court of Common Pleas sustaining Samuel C. Totaro, Jr.'s preliminary objections to Smolsky's complaint and dismissing the complaint with prejudice.  We affirm.

This appeal arises from a dispute over a property belonging to the estate of Smolsky's late father.  Included in the estate was a property located at 717 and 721 Forest Lane, Pottsville, Pennsylvania ("Forest Lane property"), which Smolsky, who is currently incarcerated at the State Correctional Institution-Mahanoy, sought to use as a residence when released on parole.  Accordingly, Smolsky offered, in writing, his residual interest in the estate to purchase the Forest Lane property.  Totaro, who was

appointed as administrator of the estate d.b.n.c.t.a.,[1] mailed a letter to the father's five residual heirs, including Smolsky, informing them that as administrator of the estate, Totaro was required to gather the estate assets, liquidate those assets to pay the estate's debts, taxes and expenses, and finally distribute the remaining assets to the residual heirs. In the letter, Totaro noted that Smolsky had expressed an interest in purchasing the Forest Lane property, which was appraised at $110,000. Totaro also stated that if Smolsky did not purchase the property, then Totaro would list the property for sale.

On January 2, 2015, Smolsky filed a motion in the orphans' court of the Bucks County Court of Common Pleas for court approval to lease/purchase the Forest Lane property. On January 22, 2015, Smolsky sent a letter to Totaro, asking for authorization to lease or purchase the Forest Lane property, by allowing him to withdraw the motion pending in the orphans' court. Totaro responded by letter dated January 23, 2015, in which Totaro stated that Smolsky had made an offer to lease the property for $500 per month. Totaro informed Smolsky that Wells Fargo Bank had a lien on the property that required a payment of $1,572 per month. Totaro also responded to Smolsky's assertion that his brother and sister would give him

---

[1] Letters of administration *de bonis non cum testamento annexo* ("d.b.n.c.t.a.") are granted when the decedent died testate and "an entire vacancy occurs in the office of personal representative before administration is completed." 20 Pa.C.S. § 3159.

their residual shares to purchase the Forest Lane property, stating that he would need written confirmation from them confirming that they would relinquish their shares. Totaro further stated that he remained concerned that he would not be able to make any distributions to the residual heirs. The letter also stated that he would be willing to consider a more specific plan that allowed the estate to pay the expenses on the Forest Lane property, but that the estate would continue to market the property for sale.

On March 23, 2015, Totaro sent another letter to Smolsky, indicating that the estate had entered into an agreement of sale for the Forest Lane property. Totaro also acknowledged Smolsky's pending motion in the orphans' court and, while asserting that he had authority to sell the property without court authorization and reject Smolsky's lease offer, noted he requested that the orphans' court schedule a hearing on the petition. During the pendency of this motion, on April 22, 2015, Smolsky filed a civil complaint against Totaro, asserting fraud and intentional misrepresentation claims based on the negotiations in the sale of the Forest Lane property. He attached to his complaint all of the above-referenced letters. On July 1, 2015, the orphans' court denied Smolsky's motion for approval to lease or purchase the Forest Lane property.[2]

_____

[2] On appeal, this Court affirmed the orphans' court's denial of the motion. **See In re Estate of Leonard J. Smolsky, Deceased**, 141 A.3d 586 (Pa.Super. 2016) (unpublished memorandum).

On November 23, 2015, Smolsky served his civil complaint on Totaro. On December 11, 2015, Totaro filed preliminary objections, alleging that the complaint sought to relitigate the issue brought before the orphans' court, to litigate an issue still pending before this Court on appeal, *see supra* note 2, and was insufficient because Smolsky failed to plead fraud with particularity. Smolsky responded to the preliminary objections on December 31, 2015. On March 15, 2016, the trial court sustained Totaro's preliminary objections and dismissed Smolsky's complaint with prejudice. On March 29, 2016, Smolsky filed a motion for oral argument to open judgment, along with a memorandum of law in support. On April 15, 2016, Smolsky filed a notice of appeal.[3]

Smolsky raises two issues on appeal:

> I. DID THE LOWER COURT SHOW ILL-WILL OR BIAS TO [SMOLSKY] WITH FAVORITISM TO [TOTARO] BY MISCONSTRUING THE CAUSE OF ACTION AND

_____

[3] Smolsky did not file his notice of appeal within 30 days as required by Pennsylvania Rule of Appellate Procedure 903, as the Bucks County Prothonotary received this notice of appeal on the 31st day. Smolsky claims that he complied with Rule 903's requirement because he delivered the notice of appeal to prison officials for mailing on April 8, 2016, thus meeting the prisoner mailbox rule. *See Thomas v. Elash*, 781 A.2d 170, 176 (Pa.Super. 2001) (extending prisoner mailbox rule to prisoner *pro se* appeals in civil matters). However, Smolsky has the burden of proving that he delivered the notice of appeal for mailing within the 30-day window. *Id.* The only proof that Smolsky provides is an unsworn verification, which is insufficient to prove the date of mailing. *Id.* "Normally, in such a case, we would remand to the trial court for a hearing on the issue." *Id.* However, no remand is necessary because we conclude that Smolsky is not entitled to relief on the merits. *Id.*

> FACTS OF THE CASE AS WELL AS IGNORING DOCUMENT EVIDENCE ATTACHED TO THE COMPLAINT'S PRIVATE RIGHT CAUSE OF ACTION PLEADING FRAUD, FRAUDULENT REPRESENTATION AND INTENTIONAL FRAUDULENT MISREPRESENTATION CONDUCT AND ACTIONS COMMITTED BY [TOTARO]?
>
> II. BASED UPON [SMOLSKY]'S CLAIMS OF "NEWLY DISCOVERED EVIDENCE" WAS IT ERROR TO NOT HOLD AN ORAL ARGUMENT HEARING ON [SMOLSKY]'S TIMELY FILED MOTION TO OPEN JUDGMENT?

Smolsky's Br. at 4 (suggested answers omitted).

Our standard of review of an order sustaining or overruling preliminary objections "is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." **Perelman v. Perelman**, 125 A.3d 1259, 1263 (Pa.Super. 2015) (quoting **Haun v. Comm. Health Sys., Inc.**, 14 A.3d 120, 123 (Pa.Super. 2011)) (internal citations omitted), *app. denied*, 141 A.3d 435 (Pa. 2016).

> Where affirmance of the trial court's order sustaining preliminary objections would result in the dismissal of an action, we may do so only when the case is clear and free from doubt.
>
> To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review the trial court's decision for an abuse of discretion or an error of law. A demurrer tests the sufficiency of challenged pleadings. Fact-based defenses, even those which might ultimately inure to the defendant's benefit, are thus irrelevant on demurrer.

***Youndt v. First Nat. Bank of Port Allegany***, 868 A.2d 539, 544 (Pa.Super. 2005) (quoting ***Werner v. Plater-Zyberk***, 799 A.2d 776, 784 (Pa.Super. 2002)) (internal citations and quotation marks omitted).

First, Smolsky asserts that the trial court improperly sustained Totaro's preliminary objections and dismissed the complaint based on bias and favoritism toward Totaro.[4]  Smolsky's Br. at 11.  Smolsky argues that his civil complaint seeks to hold Totaro personally liable for his dealings with Smolsky.  ***Id.***  Further, Smolsky contends that the orphans' court lacked jurisdiction to preclude Smolsky from advancing his fraud and intentional misrepresentation claims.  ***Id.*** at 12.  He asserts that the trial court "does not address the well pled facts of this case at all," instead "discuss[ing Smolsky]'s incarceration with more vim and vigor far beyond the scope of the case litigation issues and facts pled while ignoring the 'fraud' causes of action completely."  Finally, Smolsky argues that his fraud and intentional misrepresentation claims are properly pled.  ***Id.***  We disagree.

_____

[4] Preliminarily, we conclude that Smolsky's claims that the trial court showed bias and favoritism to Totaro are meritless.  Smolsky presents no evidence of his claims, instead baldly asserting that the trial court's ruling that Smolsky was collaterally estopped from relitigating the issue of Totaro's duty "shows bias and favoritism towards [Totaro] because he is an attorney" and because "[Smolsky] is incarcerated on totally unrelated matters." Smolsky's Br. at 11.  Because "claims [of bias] against a trial judge should not be made without clear support for the same in the record," ***Zdrok v. Main Line Nat. Mortg. Co.***, 921 A.2d 1226, 1229 (Pa.Super. 2007), and "[a]dverse rulings alone do not establish the requisite bias warranting recusal," ***Arnold v. Arnold***, 847 A.2d 674, 681 (Pa.Super. 2004), we reject Smolsky's claims of bias and favoritism.

"Pennsylvania is a fact-pleading jurisdiction." ***Sevin v. Kelshaw***, 611 A.2d 1232, 1235 (Pa.Super. 1992). "A complaint must therefore not only give the defendant notice of what the plaintiffs' claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim." ***Id.***

Under Pennsylvania Rule of Civil Procedure 1019(b), plaintiffs who assert fraud claims must aver fraud or mistake with particularity. This rule is meant to "protect those against whom generalized and unsupported fraud may be levied." ***Presbyterian Med. Ctr. v. Budd***, 832 A.2d 1066, 1072 (Pa.Super. 2003). "Thus, a party raising a claim of fraud must set forth in its pleadings specific facts to support the alleged fraud." ***Id.***

> Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation or offered simply to harass the opposing party and to delay the pleader's own obligation. . . . The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge.

***Id.*** at 1072-73 (quoting ***Bata v. Central-Penn Nat. Bank of Philadelphia***, 224 A.2d 174, 179 (Pa. 1966)).

To prove fraud or intentional misrepresentation, the plaintiff must establish:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it;

- 7 -

(5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Milliken v. Jacono*, 60 A.3d 133, 140 (Pa.Super. 2012).

In his complaint, Smolsky alleges that Totaro falsely represented that he would negotiate with Smolsky regarding the Forest Lane property and beginning on January 14, 2015, Totaro "beg[a]n a vexatious plight of deceit, fraud, fraudulent representation and intentional fraudulent misrepresentation of facts to falsely mislead [Smolsky] into relying on those facts as true all to the harms, injury and damage to [Smolsky] when [Totaro] never intended to deal truthfully or fairly with [Smolsky]." Compl. at ¶ 4-5. Smolsky alleges that, among other things, Totaro informed him, through a secretary, that there was a conflict of interest that prevented Totaro from discussing the estate administration with Smolsky. *Id.* ¶ 5. Smolsky continues by asserting that the secretary informed him that all his concerns should be placed in writing and Totaro would address each of those in a separate letter. *Id.* ¶ 6. According to Smolsky, these delays harmed his inheritance and allowed Totaro to "pad his pockets with undue extra un-called for work." *Id.*

Smolsky further avers that on January 22, 2015, Totaro told Smolsky that if he withdrew the motion pending before the orphans' court, then Totaro would sign Smolsky's parole home plan form and allow Smolsky to lease or purchase the Forest Lane property. *Id.* ¶ 7. He then alleges that Totaro "continued not to deal with [him] all to [Smolsky]'s continued

- 8 -

confinement, injury, harms and damage by [Totaro] delaying administration under false pretenses." *Id.* (emphasis in original). Smolsky then refers to a January 23, 2015 letter from Totaro, wherein Totaro stated he would continue to negotiate with Smolsky if Smolsky could provide a reasonable plan. *Id.* ¶ 8. Smolsky avers that this was ongoing fraud, specifically to deprive Smolsky of the Forest Lane property and to "pad [Totaro's] own administrative pockets through 'self-dealing.'" *Id.*

Smolsky then avers that on March 23, 2015, Totaro wrote another letter to Smolsky informing Smolsky that an agreement of sale was in place for the Forest Lane property, that Totaro had the authority to enter into this agreement of sale, and that he would abide by the instructions of the court. *Id.* ¶ 9. According to Smolsky, however, Totaro "prior thereto continuously represented to [Smolsky] and all the beneficiaries that [Totaro] could NOT sell any estate properties of the Deceased to a beneficiary without Court approval or the consent of all beneficiaries agreeing to it." *Id.* Smolsky alleges that the prior communications were thus fraud and intentional misrepresentations designed "to keep the realty of the Deceased from Smolsky and the other beneficiaries" and "create work to deprive [Smolsky] of his inheritance." *Id.*

Smolsky also attached the letters, which include his own handwritten annotations. A letter from Totaro to the beneficiaries on December 17, 2014 states that Smolsky has an interest in buying the property through his distributive share and asks the other beneficiaries to respond within 10 days

if they object to such a sale. The next letter is from Smolsky to Totaro on January 14, 2015, wherein he asserts that there is no conflict of interest between himself and Totaro and attached a "boiler-plate lease-purchase, proposed-agreement on property." Next is a letter from Smolsky to Totaro on January 22, 2015, wherein Smolsky expresses his understanding that Totaro "will promptly authorize me to lease/purchase the [Forest Lane] property . . . so that [Smolsky] may have a place to live and reside . . ., upon receipt of [an] enclosed praecipe and its filing to withdraw [the] motion."

The next attachment is a letter from Totaro to Smolsky on January 23, 2015, wherein Totaro explains that the estate is having difficulty paying off various debts. Totaro continues that the lease/purchase agreement enclosed with Smolsky's earlier letter, which allegedly offered to lease the Forest Lane property at $500 per month, would not cover the lien Wells Fargo held on the property for $1,572 per month. With respect to Smolsky's claim that his brother and sister would give up their distributive shares to help Smolsky purchase the property, Totaro responds that he would need something in writing from each of them and would need to determine how the other heirs would be compensated. Specifically, Totaro states that "once you [(Smolsky)] give me a more specific plan that will pay all the expenses with regard to the Forest Lane property, I will be happy to submit the proposal to the other heirs for approval." Notably, at the end of the letter, Totaro states that the estate "will continue to market the property, but will

continue to negotiate with you if you can provide . . . a reasonable plan."

Smolsky finally attaches a letter from Totaro dated March 23, 2015, which

states:

> This is to inform you that I have entered into an Agreement of Sale for the [Forest Lane property]. The sale price is $100,000 and settlement is to occur on or before May 16, 2015.

> I also understand that you have filed a petition to have me, as Administrator d.b.n., c.t.a of the Smolsky estate enter into a lease agreement with you for this property. Although it is my position that I as Administrator have the authority to enter into an Agreement of Sale for this property without court authorization, and also to reject your lease agreement offer, I have requested the [orphans' c]ourt to schedule a hearing on your petition so you could advise the court as to your position. I will abide by the instructions given to me by the [orphans' c]ourt.

We conclude that Smolsky has failed to sufficiently and particularly

plead his fraud and related intentional misrepresentation claims, albeit on a

different basis than the trial court.[5] Smolsky's claims of fraud, which

contend that Totaro caused a delay in the distribution of estate assets by

failing to negotiate Smolsky's desired purchase of the Forest Lane property,

is belied by the documents Smolsky attached to his complaint. These

---

[5] This Court is not bound by the rationale of the trial court, and we may affirm on any basis. *See In re Jacobs*, 15 A.3d 509, 509 n.1 (Pa.Super. 2011). In sustaining Totaro's preliminary objections, the trial court found that Smolsky's complaint failed to plead any injury and, even if Smolsky could prove some form of injury, he failed to plead how the injury was proximately caused by his reliance on Totaro's statements. Trial Ct. Op., 6/14/16, at 12-13.

documents, in contrast to Smolsky's pleadings, confirm that Smolsky cannot plead, sufficiently or particularly, that Totaro made a false statement or, even if Totaro made a false statement, that such a statement was material to the discussions regarding the Forest Lane property.

The December 17, 2014 letter shows that Smolsky, a residual heir of the estate, expressed an interest in the Forest Lane property, which Totaro conveyed to the other residual heirs of the estate. Smolsky then made a unilateral, unbinding offer on the Forest Lane property, which Totaro, as the administrator of the estate, could not accept because it would not cover the bank lien that encumbered the Forest Lane property, a debt chargeable to the estate. In response, Totaro gave Smolsky the option to make an offer that would cover these encumbrances while the estate continued to search for a buyer. Two months later, Totaro settled on a third-party purchaser who offered an amount $10,000 less than appraised value of $110,000. Under these circumstances, Smolsky has not pled with sufficient particularity that Totaro made any false statement. Rather, the documents that Smolsky attached confirm that Totaro explained to Smolsky why he could not accept the offer and allowed Smolsky to present an offer that would be amenable to the estate. Because "the *sine qua non* of actionable fraud is the showing of deception[,]" *see Frowen v. Blank*, 425 A.2d 412, 415 (Pa. 1981), and Smolsky's pleadings fail to show any deception by Totaro, we conclude that Smolsky has not pled his fraud and intentional misrepresentation claims sufficiently or particularly.

Further, even if any of Totaro's statements to Smolsky could be considered false, Smolsky fails to plead how these statements were material to any discussions surrounding the lease or sale of the Forest Lane property. "A misrepresentation is material if it is of such character that had it not been made, . . . the transaction would not have been consummated." **Sevin v. Kelshaw**, 611 A.2d 1232, 1237 (Pa.Super. 1992). A review of the complaint and attached documents fails to show that had Totaro's statements been false, Smolsky would have discontinued his pursuit of the Forest Lane property. Contrarily, the pleadings and documents show that Smolsky continued to push an offer that was untenable to the estate and Totaro left Smolsky the option to put forth another proposal. Because Smolsky fails to plead how any of Totaro's communications changed his position regarding the Forest Lane property, we conclude that he has not pled materiality sufficiently or particularly.

For these reasons, we conclude that Smolsky's pleading deficiencies are substantive, as he will not be able to plead a transaction between himself and Totaro with sufficient particularity.[6] **See Budd**, 832 A.2d at 1073.

---

[6] In light of our conclusion regarding Smolsky's failure to plead fraud and his other related claims with specificity or particularity, we need not address Totaro's other preliminary objections – a demurrer based on *res judicata* and pendency of a prior action – which were sustained by the trial court.

Next, Smolsky contends that the trial court erred in failing to hold a hearing on his "timely filed motion to open judgment." Smolsky's Br. at 15. Smolsky contends that he found new evidence that shows Totaro lied to the orphans' court and would support a motion to open judgment. *Id.* at 16. According to Smolsky, the trial court should have allowed him to argue his motion to open judgment, despite "some administrative snafu[7] [that] may have delayed the lower court from reviewing [his] pending motion for oral argument to open judgment."[8] *Id.* We disagree.

Preliminarily, we note that the certified record contains no petition to open judgment; the motion Smolsky filed was titled "motion for oral argument to open judgment." The trial court returned Smolsky's motion, stating that it was inappropriate for submission under Bucks County Rule of

_____

[7] The "administrative snafu" to which Smolsky refers was the trial court returning Smolsky's motion because it was inappropriate for submission under Bucks County Local Rule of Civil Procedure 208.3(b) and was unclear regarding the relief sought, as there was no judgment in the matter and no motion to open judgment was pending. *See* Return of Application, 4/14/16.

[8] Smolsky's remaining arguments repeat his fraud averments, at one point even suggesting that Totaro should be disbarred, Smolsky's Br. at 17, and that Totaro is equitably estopped from changing his position before the trial court in the civil matter, *id.* at 18. While we are "wiling to liberally construe materials filed by a *pro se* litigant," *O'Neill v. Checker Motors Corp.*, 567 A.2d 680, 682 (Pa.Super. 1989), Smolsky failed to raise these issues in his Pennsylvania Rule of Appellate Procedure 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii). Therefore, he had waived these claims.

Civil Procedure 208.3[9] and that it was unclear regarding the relief sought, as "[n]o judgment has been entered in this matter," and "[n]o motion to open judgment is pending." Return of Application, 4/22/16. Further, even if judgment had been entered and Smolsky had filed his motion correctly, Smolsky did not file a petition to open judgment in accordance with Pennsylvania Rule of Civil Procedure 2959. Therefore, no motion existed upon which the trial court could schedule an oral argument.

Order affirmed.

---

[9] Bucks County Rule of Civil Procedure 208.3(b) provides:

    (1)    This rule shall govern disposition of:

        (a)   rules to show cause to which responses in opposition have been filed;

        (b)   preliminary objections;

        (c)   motions for judgment on the pleadings;

        (d)   motions for summary judgment;

        (e)   objections to written discovery requests; and

        (f)   such other miscellaneous applications as may be designated by the Court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/19/2017